C. O. GORE, TRADING AS GORE GREENHOUSES
v. GEORGE J. BALL, INC.

No. 89

(Filed 30 July 1971)

**1. Uniform Commercial Code § 3— date of application**

Uniform Commercial Code is not applicable to transactions which occurred prior to the effective date of the Code. G.S. 25-10-101.

**2. Rules of Civil Procedure § 1— date of application**

The Rules of Civil Procedure held applicable to a civil action even though commenced on 3 January 1968. Session Laws of 1967, Ch. 954, § 10.

**3. Negligence § 1— violation of safety statute**

Violation of a safety statute is negligence *per se*.

**4. Agriculture § 9.5; Negligence § 1— violation of seed law— issue of negligence**

Evidence that seed dealer violated the North Carolina Seed Law is not necessarily evidence of negligence.

**5. Agriculture § 9.5— sale of mislabeled tomato seed — issue of dealer's negligence — evidence**

A seed dealer was not negligent in selling mislabeled tomato seed to the plaintiff, a farmer, where there was evidence that the dealer had purchased the seed from a reputable supplier, that the dealer received the seed already mislabeled as the variety desired by the plaintiff, and that this mislabeling could not be detected by an examination of the seed.

**6. Rules of Civil Procedure § 8— construction of complaint**

Allegations of the complaint must be liberally construed. G.S. 1A-1, Rule 8.

**7. Rules of Civil Procedure § 8— claim for relief — pleading of two or more statements**

The pleader may set forth two or more statements of a claim in the same count. G.S. 1A-1, Rule 8(e)(2).

**8. Agriculture § 9.5— sale of mislabeled tomato seed — dealer's breach of contract — sufficiency of allegations and evidence**

Plaintiff's evidence that plaintiff contracted with a seed dealer for the purchase of Heinz 1350 tomato seed, that such tomatoes are suitable for table use, and that the dealer delivered seed which produced tomatoes suitable only for making tomato paste is sufficient to support a finding by the jury of breach of contract by the dealer.

**9. Contracts § 4— failure of consideration — rights of disappointed party**

Failure of consideration gives the disappointed party a right to rescind the contract and recover what he has paid or to defend a suit

Gore v. Ball, Inc.

brought against him thereon, for the reason that the contract is a nullity.

**10. Contracts § 21; Agriculture § 9.5— breach of contract — sale of tomato seed**

A seed retailer who contracted to sell and deliver Heinz 1350 tomato seed but who delivered instead the seed of a completely different type of tomato is liable for damages for breach of contract.

**11. Agriculture § 9.5; Sales § 8— sale of tomato seed — extent of dealer's warranty**

A printed statement on a seed catalogue, order blanks, and seed packets, that the seed dealer warrants "to the extent of the purchase price" that the seed delivered is as described on the container, did not, as a matter of law, become a part of the contract of sale between a farmer and the dealer for tomato seed, since the statement was not in such a position as would call it to the attention of the farmer.

**12. Contracts § 21— breach of contract — liability for damages**

A party to a contract may not, by his unilateral declaration, extraneous to the contract, free himself from or limit his liability for damages for his breach of it.

**13. Contracts § 12— construction of contract — unambiguous language — role of court and jury**

While the construction of clear and unambiguous language in a contract is for the court, it is for the jury to determine whether a particular agreement was or was not part of the contract actually made by the parties.

**14. Contracts § 6— violation of public policy**

A provision in a contract which is against public policy will not be enforced.

**15. Contracts § 6— violation of public policy — separability of provisions**

When the agreement found violative of public policy is separable from the remainder of the contract, the contract will be given effect as if the provision so violative of public policy had not been included therein.

**16. Sales § 22; Statutes § 5— protection against mislabeling of goods — statutory exemptions**

In legislation designed for the protection of a segment of the public from the mislabeling of goods sold, exemptions are to be strictly construed.

**17. Agriculture § 9.5— seed law — exemption from penalties — dealer's breach of contract**

Provision of the N. C. Seed Law exempting from the penalties thereof a dealer who sells mislabeled vegetable seeds under designated circumstances does not absolve the dealer for breach of contract arising out of the sale of mislabeled seed. G.S. 106-277.10(e); G.S. 106-277.24.

**18. Contracts § 29— breach of contract — limitation of damages**

Ordinarily, parties to a contract are free to enter into agreements limiting the amount which may be recovered for breach of their contract; nevertheless, the law does not look with favor on provisions which relieve one from liability for his own fault or wrong.

**19. Agriculture § 9.5— warranty of seed dealer — seed law — public policy**

A seed dealer's limitation of his warranty of tomato seed "to the extent of the purchase price" is contrary to the public policy of the State as declared in the Seed Law and is invalid.

**20. Damages § 8; Agriculture § 9.5— sale of mislabeled tomato seed — breach of contract — damages**

In a farmer's action against a seed dealer for breach of contract arising out of the sale of mislabeled tomato seed, the seed having produced tomatoes suitable only for making tomato paste rather than the higher-grade tomatoes suitable for table-eating, the rule against the allowance of speculative or conjectural damages is not violated by permitting the jury to estimate, upon testimony given by experts in truck farming, the size and value of the crop which would have been produced had the seed been of the higher-grade variety.

**21. Agriculture § 9.5— sale of mislabeled tomato seed — action for breach of contract — measure of damages**

In a farmer's action against a seed dealer for breach of contract arising out of the sale of mislabeled tomato seed, the seed having produced tomatoes suitable only for making tomato paste rather than the higher-grade tomatoes suitable for table eating, the measure of damages is the value of the crop which the jury so finds would have been raised had the seed been of the higher-grade variety, less the value of the crop actually raised and less any additional expense plaintiff would have had to incur to produce the crop contemplated.

ON *certiorari* to the Court of Appeals to review its decision, reported in 10 N.C. App. 310, 178 S.E. 2d 237, remanding this matter to the Superior Court of COLUMBUS County on the ground of error in the direction of a verdict in favor of the defendant.

The plaintiff's evidence is to the following effect:

The plaintiff raises tomatoes for sale for table use. The defendant is a supplier of seeds, including tomato seed. The defendant published and distributed to growers, including the plaintiff, its catalogue for the year 1966. It thereby solicited orders for various types of seed, including a variety of tomato seed known as Heinz No. 1350, as to which the catalogue stated:

"No. 9638 Heinz 1350. 75 days. Fruit is slightly flattened, uniform and free of cracks. Has excellent size and is a high yielder. Resistant to fusalarium and verticillium.

One of the best of recent introductions in standard tomatoes."

The plaintiff, in the latter part of 1965, ordered from the defendant four ounces of Heinz 1350 tomato seed, for which he remitted the catalogue price of $5.00, using the order blank contained in the catalogue. Packets containing four ounces of seed were received by the plaintiff from the defendant on 6 January 1966. The catalogue, the order blank used by the plaintiff, the defendant's invoice and the several packets containing the seed delivered by the defendant each bore the following statement:

"LIMITATION OF WARRANTY: Geo. J. Ball, Inc. warrants, to the extent of the purchase price, that seeds, plants, bulbs, growers supplies and other materials sold are as described on the container, within recognized tolerances. We give no other or further warranty, express or implied."

The plaintiff planted the seed in his plant bed in the latter part of 1966 for use in producing his 1967 crop, the delay in the use of the seed by the plaintiff not being material to this action. In due time he transplanted the tomato plants to his field, the proper preparation of which is not questioned. He first set out plants over a two-acre tract in April and then over a second two-acre tract in May, intending to make a third transplanting of another two-acre tract in June so as to provide a yield of tomatoes over the season. No question is raised as to the normality of the growth and strength of the plants produced from the seed or as to the normality of the quantity of fruit produced thereby.

When the young tomatoes first appeared on the plants, the unusual shape disclosed that they were not tomatoes of the Heinz 1350 type, but were a variety of tomato wholly unsuited for sale for table use and useful only in the production of tomato paste. The tomatoes so produced on the first two-acre planting were sold for the best price obtainable, the second two-acre planting was destroyed and replaced with plants, apparently of a different type of table tomato, purchased locally, and the resulting crop was sold for the best price obtainable, and the third two-acre tract was diverted to another crop.

Immediately upon discovery of the type of tomato so being produced, the plaintiff notified the defendant, who sent him

its check to refund the $5.00 paid by the plaintiff for the seed, which check the plaintiff did not cash.

It is not possible for either the plaintiff or the defendant to distinguish Heinz 1350 tomato seed from other varieties of tomato seed by sight. No question is raised as to the cultivation methods used by the plaintiff. The Heinz 1350 tomato has resulted in satisfactory production in the plaintiff's area and is suitable for table use.

The defendant was not the producer of the seed delivered to the plaintiff. It purchased them from the Ferry Morse Company, a well known and reputable dealer in seeds. It received in 1966 a bulk delivery of tomato seed from Ferry Morse. The seed so received by the defendant were mislabeled when it received them. The defendant broke the original package so received from Ferry Morse and repackaged and labeled the seed "Heinz 1350" and marketed them in its own name without indicating that they were produced by another. It discovered the mislabeling in August 1966, but had no record of those who had purchased the seed from it. Consequently, it did not, after discovering the mislabeling, notify the plaintiff thereof. The only test made by the defendant of seed so purchased by it for resale was with reference to germination. It could not determine the variety of the seed by examination of the seed themselves. Each packet in which the seed were so resold by the defendant bore on the front side the designation:

"TOMATO
HEINZ 1350
Red
S E E D "

The limitation of warranty appeared on the reverse side of the packet.

The plaintiff's complaint alleges two causes of action. The first is grounded upon allegations of negligence by the defendant in mislabeling the seed. The second, otherwise identical with the first, contains the following allegation instead of the allegation of negligence:

"12. That the defendant under its sale to the plaintiff as aforesaid contracted therewith and warranted by implication or expressly, that the seeds in question were of value

Gore v. Ball, Inc.

to the defendant and fit for the purpose that same were designed and warranted. That on the contrary, the seeds sold by the defendant were of no value whatsoever to the plaintiff and there was a complete failure of consideration and a breach of the contractual relationship between the parties."

In its answer the defendant denied any negligence by it and denied the above quoted allegation as to failure of consideration and breach of contract. It further pleaded as an affirmative defense the above quoted provision entitled "Limitation of Warranty" and pleaded its tender to the plaintiff of the refund of the $5.00 paid by him for the seed.

At the conclusion of the plaintiff's evidence, the Superior Court granted the defendant's motion for a directed verdict and dismissed the action.

On appeal to it by the plaintiff, the Court of Appeals held that there was no error in directing the verdict for the defendant upon the cause of action grounded in tort, but the plaintiff's evidence, taken in the light most favorable to him, would justify the jury in finding a breach of contract, for which the plaintiff could recover nominal damages, at least. Consequently, the Court of Appeals remanded the matter to the Superior Court "for trial upon plaintiff's allegations of breach of contract." The defendant's petition for *certiorari* to review this decision was allowed.

*Powell, Lee & Lee by J. B. Lee for plaintiff appellee.*

*Marshall, Williams, Gorham & Brawley by Lonnie B. Williams for defendant appellant.*

LAKE, Justice.

[1] This transaction having occurred prior to the effective date of the Uniform Commercial Code, the provisions of that Act are not applicable. G.S. 25-10-101.

[2] Though this action was commenced 3 January 1968, the Rules of Civil Procedure set forth in Chapter 1A of the General Statutes apply. Session Laws of 1967, ch. 954, § 10. Rule 8 provides that a pleading which sets forth a claim for relief, "shall contain (1) A short and plain statement of a claim sufficiently

particular to give the court and the parties notice of the transactions, occurrences, or series of transactions or occurrences intended to be proved showing that the pleader is entitled to relief, and (2) A demand for judgment for the relief to which he deems himself entitled." It further provides, "All pleadings shall be so construed as to do substantial justice."

For his first cause of action, the plaintiff alleges in his complaint that he was damaged by his use of seed delivered to him by the defendant, in response to his order, which seed were not the variety ordered by him, but a totally different variety, mislabeled as the variety he ordered, the mislabeling being due to the negligence of the defendant, which negligence was the proximate cause of the plaintiff's damage. The complaint does not make reference to the North Carolina Seed Law, G.S. 106-277 to 106-277.28. The first cause of action rests entirely upon allegations of negligence by the defendant.

**[3-5]** It is well established that violation of a safety statute is negligence *per se. Bell v. Page,* 271 N.C. 396, 156 S.E. 2d 711. *Ratliff v. Power Co.,* 268 N.C. 605, 151 S.E. 2d 641, 21 A.L.R. 3d 360; *Byers v. Products Co.,* 268 N.C. 518, 151 S.E. 2d 38; *Carr v. Transfer Co.,* 262 N.C. 550, 138 S.E. 2d 228; *Reynolds v. Murph,* 241 N.C. 60, 84 S.E. 2d 273. The North Carolina Seed Law, *supra,* is not, however, a safety statute. Evidence of a violation of it is not, necessarily, evidence of negligence. The evidence offered by the plaintiff is not sufficient to support a finding of negligence. It shows that the defendant purchased the seed from a reputable dealer, that its supplier had labeled the seed as being of the variety ordered by the plaintiff and that this mislabeling could not be detected by an examination of the seed. We, therefore, affirm the holding by the Court of Appeals that the trial judge was correct in directing a verdict for the defendant upon the plaintiff's first cause of action.

**[6-8]** The statement in the complaint of the plaintiff's second cause of action is by no means a model of clarity and precision as to the theory upon which he relies. However, construing the allegation liberally, as we are required to do by Rule 8 of the Rules of Civil Procedure, it gave to the court and to the defendant notice that the plaintiff intended to prove the making of a contract of sale, a breach of that contract by failure to deliver the seed ordered, a breach of warranty of fitness of the seed for the purpose for which the plaintiff intended to use them

and a failure of consideration. Rule 8(e)(2) permits the pleader to set forth two or more statements of a claim in the same count.

In the statement of the plaintiff's second cause of action, it is alleged that, by reason "of the failure of consideration and the breach of contract by the defendant," the plaintiff has been damaged in the amount of $9,966. The allegations constituting the statement of this cause of action make it clear that the alleged damage consisted in the plaintiff's loss of the crop which he would have produced had the contract not been broken. It is quite clear from the allegations that the plaintiff is not seeking a return of the amount paid by him for the seed.

[9] Failure of consideration is a defense to an action brought upon a contract against the party who has not received the performance for which he bargained. It also entitles such party to sue to recover that which he has paid for the performance for which he bargained. *Mills v. Bonin*, 239 N.C. 498, 80 S.E. 2d 365; *Swift & Co. v. Aydlett*, 192 N.C. 330, 135 S.E. 141; *Jewelry Co. v. Stanfield*, 183 N.C. 10, 110 S.E. 585; Williston on Contracts, 3d Ed. §§ 814 and 885; Restatement of Contracts, § 399; 17 AM. JUR. 2d, Contracts, §§ 397 and 399; 17 C.J.S., Contracts, § 129. That is, as Professor Williston says in § 818 of his treatise, failure of consideration gives the disappointed party a right to rescind the contract and recover what he has paid or to defend a suit brought against him thereon, for the reason that the contract is a nullity. Obviously, while, in the statement of the second cause of action, the complaint alleges failure of consideration, the plaintiff is not seeking a refund of the price paid by him for the seed on the theory that the contract was a nullity, but is seeking damages for breach of contract by the defendant.

The plaintiff offered in evidence the defendant's catalogue from which the plaintiff selected the variety of seed desired by him, the order blank used by him in ordering these seed from the defendant, the defendant's invoice accompanying the shipment, and one of the packets in which the defendant delivered the seed to him. Each of these stated that the defendant gave no warranty, express or implied, except that "to the extent of the purchase price" the defendant warranted that the seed "are as described on the container;" that is, that the seed so delivered were Heinz 1350 tomato seed, no other descriptive matter appearing on the packet.

In *Swift & Co. v. Aydlett, supra,* this Court said, "A vendor of an article of personal property, by name and description, cannot relieve himself of the obligation arising from the warranty implied by law to deliver an article which is at least merchantable, or saleable or fit for the use for which articles of that name and description are ordinarily sold and bought." Thus, had there been no statement whatever by the defendant with respect to warranty, its acceptance of the plaintiff's order, by the shipment of seed to him, would constitute an undertaking by it to deliver to him the specified quantity of Heinz 1350 tomato seed, and no other.

[10]   The defendant's statement on the above mentioned documents that it warranted the seed sold to be as described on the container, *i.e.,* to be Heinz 1350 tomato seed, added nothing to its undertaking in the contract of sale. Its statement in these several documents that it gave no other or further warranty took nothing from that undertaking. The plaintiff, in this action, does not rely upon any further warranty. He simply contends that the defendant did not perform its contract and thereby he has been damaged. One who contracts to sell to another a Jersey cow is liable for damages for breach of contract if he delivers a mule, or even an Angus cow, notwithstanding his statement, in the contract of sale, that he made no warranty as to the qualities of the cow he contracted to sell and deliver. So it is with one who contracts to sell and deliver Heinz 1350 tomato seed and delivers, instead, seed of a completely different type of tomato.

[8]   The Court of Appeals was, therefore, correct in its holding that the plaintiff has alleged and has introduced evidence sufficient to permit a jury to find that the defendant committed a breach of its contract by the delivery to the plaintiff of seed not of the kind specified in his order. Failure of the plaintiff to introduce evidence to show a warranty of quality was not sufficient basis for the allowance of the defendant's motion for a directed verdict as to the plaintiff's second statement of his cause of action.

The remaining question relates to the measure of damages recoverable by the plaintiff, assuming the jury should find the defendant did not deliver to him the seed which he ordered.

In the above mentioned "Limitation of Warranty," appearing in the catalogue and upon the order blank, the invoice and the seed packet, the defendant stated that it warranted "to the extent of the purchase price" that the seed delivered were as described on the container. We think the meaning of this statement, assuming it to be part of the contract between the parties, is that the defendant will refund the amount paid by the plaintiff if the defendant delivers a kind or variety of seed different from that specified in the order and, in that event, will pay no more, irrespective of the damage suffered by the plaintiff as the result of such breach of its contract.

[11, 12] Unless the phrase, "to the extent of the purchase price," became a part of the contract of sale and is enforceable as such, it does not limit the damages recoverable by the plaintiff for the breach of that contract. A party to a contract may not, by his unilateral declaration, extraneous to the contract, free himself from or limit his liability for damages for his breach of it.

[13] This is not a formal, written contract of sale. The defendant contends that the amount of damages recoverable for its breach of the contract is limited to the purchase price of the seed. This contention is based entirely upon the fact that the defendant caused to be printed in its catalogue, upon the order blank sent out by it with the catalogue, upon its invoice accompanying the shipment of seed and upon the packet containing the seed the alleged limitation. It is not contended that this limitation of the damages recoverable was otherwise called to the attention of the plaintiff. Therefore, unless its location in and upon the above mentioned documents, the size or color of the type and other circumstances, were sufficient to call this statement to the attention of the plaintiff, as being part of the contract into which he was entering, the statement would not constitute part of that contract. See: Williston on Contracts, 3d Ed, § 90B; *Stevenson v. B. B. Kirkland Seed Co.*, 176 S.C. 345, 180 S.E. 197. While the construction of clear and unambiguous language in a contract is for the court, it is for the jury to determine whether a particular agreement was or was not part of the contract actually made by the parties. *Root v. Insurance Co.*, 272 N.C. 580, 158 S.E. 2d 829. The direction of a verdict for the defendant took this question from the jury.

[11]   In the present case we, of our own motion, have directed the clerk of the trial court to transmit to us, for addition to the record on appeal, the exhibits attached to the complaint and those introduced in evidence. We observe that in all of the documents upon which the defendant relies, the phrase limiting the amount of recovery for delivery of the wrong kind or variety of seed was dropped into a paragraph dealing with what the defendant did and did not warrant with reference to the seed. The paragraph is entitled "Limitation of Warranty," not "Limitation of Damages Recoverable for Breach of Contract." This phrase, purporting to limit the amount of recovery, is not emphasized by the manner in which it appears in the paragraph. In each document the paragraph, itself, is printed in small type of the same color of ink as the other printed matter on the page, only the caption, "LIMITATION OF WARRANTY," being capitalized and printed in heavier type. In the 161 page catalogue, filled with the customary attractive color photographs of flowers, fruit and vegetables and language descriptive of their many desirable attributes, this statement appears nowhere save on the last page, where, along with much other matter, it is printed in small type and the usual black ink, with only the caption emphasized by capitalization and heavier type. Nothing whatever appears on page 71, whereon the Heinz 1350 variety of tomato is described, to suggest any limitation of the defendant's liability for delivery of a different variety in response to an order specifying Heinz 1350. Under these circumstances, we cannot say that, as a matter of law, the "LIMITATION OF WARRANTY" became part of the contract of sale so as to justify a directed verdict for the defendant.

One experienced in the analysis of legal documents can readily perceive the significance of the phrase limiting the amount of recovery, but most retail purchasers of seed are not experienced in the art of discovering such phrases in the midst of language relating to other matters. Other seed vendors apparently rely upon virtually the same language printed in their catalogues and like documents. See: *Desert Seed Co. v. Drew Farmers' Supply, Inc.*, 248 Ark. 858, 454 S.W. 2d 307; *Asgrow Seed Co. v. Gulick*, 420 S.W. 2d 438 (Tex. Civ. App.) ; *Nakanishi v. Foster*, 64 Wash. 2d 647, 393 P. 2d 635. If such practice is sufficiently widespread among seed vendors and is sufficient to limit the vendor's liability, the farmer will find it virtually

impossible to purchase seed with an effective right of recourse for the delivery of seed not conforming to his order.

[14, 15]   Even though the jury should find that the provision entitled "Limitation of Warranty" was so located and printed in the catalogue and other documents relied upon by the defendant as to bring it to the plaintiff's attention and so make it a part of the contract, it will not avail the defendant if it is contrary to the public policy of this State. A provision in a contract which is against public policy will not be enforced. *In re Publishing Co.*, 231 N.C. 395, 57 S.E. 2d 366, 14 A.L.R. 2d 842; *Glover v. Insurance Co.*, 228 N.C. 195, 45 S.E. 2d 45; *Cauble v. Trexler*, 227 N.C. 307, 42 S.E. 2d 77; *Phosphate Co. v. Johnson*, 188 N.C. 419, 428, 124 S.E. 859; *Miller v. Howell*, 184 N.C. 119, 113 S.E. 621; *Fashion Co. v. Grant*, 165 N.C. 453, 81 S.E. 606. "[A]greements are against public policy when they tend to the violation of a statute." *Glover v. Insurance Co., supra.* "The purpose of the statute becomes a public policy." *Cauble v. Trexler, supra.* When the agreement found violative of public policy is separable from the remainder of the contract, the contract will be given effect as if the provision so violative of public policy had not been included therein. *In re Publishing Co., supra.*

In *Cauble v. Trexler, supra*, this Court reversed a judgment of nonsuit in an action to enjoin foreclosure of a second mortgage upon farm land for the reason that it was found violative of the purpose of the Emergency Farm Mortgage Act of 1933. Speaking through Justice Winborne, later Chief Justice, the Court said:

"The primary object of the statute is relief to farmers from the load of oppressive debts, and any benefit to the creditors of the farmer is merely incidental. * * *

"While this particular subject does not seem to have been treated heretofore by this Court, the courts of other jurisdictions have dealt with it in well considered opinions, and have held almost uniformly, that notes and mortgages, given by a former debtor, to his creditor to make up and secure the difference between the amount paid under a scale-down settlement pursuant to the Emergency Farm Mortgage Act of 1933, *supra*, and the amount originally owed, are contrary to public policy and void."

In *Miller v. Howell, supra,* this Court affirmed a judgment denying recovery on a note given for the purchase price of stock feed. Speaking through Justice Hoke, later Chief Justice, this Court said that, irrespective of the jury's finding of fraud in the execution of the note, no recovery could be had upon it for the reason that the note grew out of and was dependent upon a transaction, forbidden and made criminal by the statutory prohibition of any sale of such commodity in this State until the vendor registered with the Commissioner of Agriculture and filed with him a labeled package of each brand of feed. The vendor having failed to comply with the statute, the Court held the note unenforceable notwithstanding the fact that the statute did not specifically make the contract void. The Court quoted the following statement from *Courtney v. Parker,* 173 N.C. 479, 92 S.E. 324:

> "It is well established that no recovery can be had on a contract forbidden by the positive law of the State, and the principle prevails as a general rule whether it is forbidden in express terms or by implication arising from the fact that the transaction in question has been made an indictable offense or subjected to the imposition of a penalty. [Citations omitted.] In reference to an avoidance of a contract by reason of an implied prohibition, it is the rule very generally enforced that recovery is denied to the offending party when the transaction in question is in violation of a statute establishing a general police regulation to 'safeguard the public health or morals or to protect the general public from fraud or imposition.' "

The North Carolina Seed Law, G.S. 106-277 to G.S. 106-277.28, declares that its purpose is "to regulate the labeling * * * sale and offering `* * * for sale of * * * vegetable seeds * * * ." Obviously, it is intended for the protection of North Carolina farmers from the disastrous consequences of the sale and delivery to them of seed falsely labeled. The Act defines "labeling" to include "all labels and other written, printed or graphic representations in any manner whatsoever accompanying and pertaining to any seed whether in bulk or in containers and includes representations on invoices." G.S. 106-277.2(18). It defines "vegetable seeds" to include "the seeds of those crops which are grown in gardens or on truck farms." G.S. 106-277.2(37). It requires each container of vegetable seeds sold in

or transported into this State for seeding purposes to bear thereon, or upon an attachment thereto, a plainly written or printed label showing the "name of kind and variety of seed." G.S. 106-277.3 and G.S. 106-277.6. Obviously, this means a correct showing of kind and variety. The immediate vendor is made responsible for the presence of the required labels. G.S. 106-277.8. It is made unlawful to transport or to sell, within this State, vegetable seed, for seeding purposes, which have a false or misleading label, or "to which there is affixed names or terms that create a misleading impression as to the kind, kind and variety, history, productivity, quality or origin of the seeds." G.S. 106-277.9. In a section entitled "Penalty for Violations," the violation of any provision of the Act is made a misdemeanor punishable by a fine of not more than $500. G.S. 106-277.24. It is further provided that seed sold or offered for sale, in this State, contrary to the provisions of the Act are subject to seizure and destruction or other disposition. G.S. 106-277.25. Under certain circumstances, the Commissioner of Agriculture is authorized to issue and enforce a "stop-sale" order. G.S. 106-277.22.

In G.S. 106-277.10, certain exemptions are provided. Paragraph (e) of this section is the only such provision which might be deemed applicable to the present case. It states: "No person shall be subject *to the penalties* of this article for having sold * * * vegetable seeds which were incorrectly labeled or represented as to origin, kind or variety when such seeds cannot be identified by examination thereof unless such person has failed to obtain an invoice or grower's declaration giving origin, kind and variety or take such other precautions as may be necessary to insure the identity to be that stated." (Emphasis added.) This paragraph clearly exempts the seller from the provisions of G.S. 106-277.24, entitled "Penalty for Violations," which, as above noted, imposes a fine upon conviction of a violation of any provision of the Act.

[16, 17] In legislation designed for the protection of a segment of the public from the mislabeling of goods sold, exemptions are to be strictly construed. Very clearly, the Seed Law is not limited in its purpose or scope to the protection of the purchaser from fraud by the immediate vendor. We, therefore, conclude that this provision exempting the vendor, under the circumstances designated, from *the penalties* imposed by the Act is

---

Gore v. Ball, Inc.

---

not intended to absolve him from liability to the purchaser for breach of contract.

In G.S. 106-277.11, the Seed Law provides that the use of a "disclaimer, nonwarranty or limited warranty clause in any invoice, advertising * * * or graphic matter pertaining to any seed shall not constitute a defense * * * *in any prosecution or in any proceedings for confiscation of seeds* * * * ." (Emphasis added.) We do not construe this as having any bearing upon any other effect of such disclaimer or limitation clause.

[18]   Ordinarily, parties to a contract are free to enter into agreements limiting the amount which may be recovered for breach of their contract. Williston on Contracts, 3d Ed, § 781A; Corbin on Contracts, § 1472; 17 AM. JUR. 2d, Contracts, § 188. Nevertheless, "The law does not look with favor on provisions which relieve one from liability for his own fault or wrong." 17 AM. JUR. 2d, Contracts, § 188. As the Supreme Court of New Jersey has said in *Henningsen v. Bloomfield Motors,* 32 N.J. 358, 161 A. 2d 69, 75 A.L.R. 2d 1, "[D]isclaimers or limitations of the obligations that normally attend a sale, * * * are not favored, and * * * are strictly construed against the seller."

In the Henningsen case, *supra,* the wife of a purchaser of a new automobile was injured and the automobile became a total loss when it suddenly went out of control while the purchaser's wife was driving it in a proper manner. The cause of the accident was a defect in the steering mechanism. Suits were brought by the husband and the wife against the seller and the manufacturer of the car on the theories of negligence and warranty. The negligence counts were dismissed in the trial court, but both plaintiffs recovered verdicts against both defendants on the theory of breach of warranty. The purchase contract, among many other provisions, expressly provided that the manufacturer warranted the vehicle to be free from defects in material or workmanship under normal use and service, but limited the manufacturer's liability upon such warranty to "making good at its factory any part or parts" returned to it within 90 days after delivery of the car to the original purchaser and before the vehicle had been driven 4,000 miles. With reference to this provision for limited liability, the New Jersey Court, after recognizing the general principle that, in the absence of fraud, one who does not choose to read a contract before signing it cannot later relieve himself of its burdens said:

Gore v. Ball, Inc.

"It seems obvious in this instance that the motive was to avoid the warranty obligations which are normally incidental to such sales. The language gave little and withdrew much. In return for the delusive remedy of replacement of defective parts at the factory, the buyer is said to have accepted the exclusion of the maker's liability for personal injuries arising from the breach of the warranty, and to have agreed to the elimination of any other express or implied warranty. An instinctively felt sense of justice cries out against such a sharp bargain. * * *

"The traditional contract is the result of free bargaining of parties who are brought together by the play of the market, and who meet each other on a footing of approximate economic equality. In such a society there is no danger that freedom of contract will be a threat to the social order as a whole. But in present-day commercial life the standardized mass contract has appeared. It is used primarily by enterprises with strong bargaining power and position. 'The weaker party, in need of the goods or services, is frequently not in a position to shop around for better terms, either because the author of the standard contract has a monopoly (natural or artificial) or because all competitors use the same clauses. * * * '

"The warranty before us is a standardized form designed for mass use. It is imposed upon the automobile consumer. He takes it or leaves it, and he must take it to buy an automobile. * * *

"Although the courts, with few exceptions, have been most sensitive to problems presented by contracts resulting from gross disparity in buyer-seller bargaining positions, they have not articulated a general principle condemning, as opposed to public policy, the imposition on the buyer of a skeleton warranty as a means of limiting the responsibility of the manufacturer. * * *

"In the framework of this case, illuminated as it is by the facts and the many decisions noted, we are of the opinion that Chrysler's attempted disclaimer of an implied warranty of merchantability and of the obligations arising therefrom is so inimical to the public good as to compel an adjudication of its invalidity."

Gore v. Ball, Inc.

In the present case, it is not necessary for us to go so far as the New Jersey Court did in the Henningsen case, *supra.* Here, the statute has declared the policy of North Carolina to be one of protecting the farmer from the disastrous consequences of planting seed of one kind, believing he is planting another. To permit the supplier of seed to escape all real responsibility for its breach of contract by inserting therein a skeleton warranty, such as was here used, would be to leave the farmer without any substantial recourse for his loss.

While there is no element of personal safety involved in the use of falsely labeled seed, such as there is in the case of a defective automobile, the breach of the contract of sale of seed does not, like the breach of warranty of an automobile part, *sometimes* cause disaster. It *always* causes disaster. Loss of the intended crop is inevitable. The extent of the disaster is measured only by the size of the farmer's planting. It may well, in terms of financial loss, exceed the damages flowing from a breach of warranty of quality of an automobile part.

[19]  We think it clear that the phrase, "to the extent of the purchase price," as used in the "Limitation of Warranty" relied upon by the defendant, is contrary to the public policy of this State as declared in the North Carolina Seed Law, *supra,* and is invalid. See, *Klein v. Asgrow Seed Co.,* 54 Cal. Rptr. 609, 618. Such provision, therefore, even if it otherwise be deemed a part of the contract of sale, does not bar the plaintiff from a recovery in this action of the full damages which he would otherwise be entitled to recover for the breach of the contract by the defendant.

Decisions in other jurisdictions are not in agreement as to the measure of damages recoverable for the seller's breach of contract by delivering seed of a different kind or variety from that ordered by the buyer. The principal cause for this diversity of opinion lies in the respective applications of the principle that damages may not be awarded on the basis of speculation and conjecture. Many of the decisions, apparently in conflict, are distinguishable upon the facts therein with reference to the reasonable certainty of the plaintiff's proof of loss. We think the proper rule governing such cases was thus laid down in *Malone v. Hastings,* 193 F.1 (Fifth Circuit), as follows:

> "If, under the evidence in a particular case, the damages are susceptible of reasonable computation, and are

within the actual contemplation of the parties to the contract, there can be no valid reason for rejecting them merely because they are in the nature of lost profits, or depend upon the estimated value of a growing, but unmatured crop."

In *Wolcott v. Mount*, 36 N.J.L. 262, and in *White v. Miller*, 71 N.Y. 118, the courts allowed recovery of damages based upon the difference between the actual value of the crop produced with defective seed and the estimated value of a crop which would have been produced from seed according to the contract. In these cases, the courts held that evidence showing the results obtained by the cultivation of similar crops on portions of the same land or on adjoining lands, under similar conditions, furnished data sufficient to support the award.

In *Nakanishi v. Foster, supra,* the Supreme Court of Washington held that the measure of damages recoverable from a processor, who negligently mislabeled seed ultimately sold to the plaintiff, was the market value of the crop which would have been produced had the seed been as ordered, less the unincurred expense of raising, harvesting and marketing the crop and less the salvage value of the crop actually grown, the plaintiff having offered substantial evidence of all these factors. To the same effect are *Hobdy & Read v. Siddens*, 198 Ky. 195, 248 S.W. 505, and *Henderson v. Berce*, 142 Me. 242, 50 A. 2d 45, 168 A.L.R. 572, these cases being suits for damages for breach of warranty. See also: Annots., 168 A.L.R. 581, 591-594; 32 A.L.R. 1241, 1246; 16 A.L.R. 859, 887-895. In 46 AM. JUR., Sales, § 750, the rule as to the measure of damages for breach of warranty of seed is thus stated:

"The ordinary measure of damages, or the measure of general damages, for breach of a warranty as to the variety of seeds is the difference between the value of the crop raised from the seeds furnished and the value of the crop which would have been raised if the seeds furnished had been as warranted, apparently taking also into consideration the difference, if any, between the expense of raising the crop from the seeds which were furnished and the expense of raising the crop from seeds complying with the warranty."

In *Reiger v. Worth*, 127 N.C. 230, 37 S.E. 217, this Court had before it an action for breach of warranty in the sale of

seed rice, the seed sold as "good seed rice" having failed to germinate. Thus, there was a complete failure of the crop. There was evidence as to the average yield of rice on land such as the plaintiff's, prepared as his land was prepared, but the report of the decision does not show that this average related to the year in question or to land in the vicinity of the plaintiff's land. The trial court instructed the jury that they would allow the plaintiff such damages as they found from the evidence his net profit on the crop would have been had there been no breach of warranty. This Court, speaking through Justice Montgomery, said:

> "[T]he plaintiff ought not to have been allowed to recover the amount estimated as the crop of rice which might have been produced upon the land if the rice had been good seed rice. * * *
>
> "We think the true rule for the measure of the plaintiff's damage in this case is the amount which he paid the defendant for the rice, the amount which he expended in the preparation of the soil for the crop and for the planting or sowing of the seed, and because it was too late to plant another crop of rice he ought also to recover a reasonable rent for the land * * * subject to be reduced, however, by such amount as the defendant may be able to show that the plaintiff could have rented the land for, after it was too late to plant or sow rice, to be put in other crops than rice."

[20] *Reiger v. Worth, supra,* is distinguishable from the case now before us. There, the seed sown by the plaintiff did not germinate so that the plaintiff produced no crop whatever. There, the only evidence upon which the jury could estimate what the crop would have been, had the seed been as warranted, related to the average yield. Apparently, this average did not reflect only those crops grown in the immediate vicinity in the same year. In the case now before us, on the other hand, the plaintiff grew on two acres of his land a crop of paste tomatoes from the seed sold to him by the defendant. Expert witnesses viewed the crop so grown. The methods of cultivation used by the plaintiff and the prevailing weather conditions and other matters relating to the production of this crop, as compared with a crop of Heinz 1350 tomatoes, were or could have been shown in evidence. There is nothing to indicate that tomato vines of the Heinz 1350 variety would not have flourished to the

same extent as the vines which were actually produced upon this land from the seed sold by the defendant. To permit the jury to estimate the size and value of the crop which would have been produced had the vines been of the Heinz 1350 variety, based upon testimony of experts in truck farming, would not, in our opinion, violate the rule against the allowance of speculative or conjectural damages.

Similarly, the plaintiff grew upon his second two-acre tract a crop of table tomatoes, using plants of a variety other than Heinz 1350. Again, it is not unduly speculative to permit the jury to estimate the size and value of the crop which would have been produced had these vines been of the Heinz 1350 variety.

As to the third two-acre tract which the plaintiff intended to use for his late crop of Heinz 1350 tomatoes, but which he diverted to another use in view of his discovery of the defendant's breach of the contract, we again are of the opinion that the jury could reasonably estimate the amount of the crop which the plaintiff would have produced on that tract, in the light of the actual results obtained by him on the other two tracts and in the light of evidence as to the similarity or difference in weather conditions and other factors, entering into the production of tomatoes, between the harvesting of the early crop and the time at which the late crop would have been harvested.

[21]  Thus, the basis for the decision in *Reiger v. Worth, supra,* is not present in this case. Consequently, we hold that, under the circumstances of the present case, the measure of damages for the breach of contract is the value of the crop which the jury so finds would have been raised had the seed been of the Heinz 1350 variety, less the value of the crops actually raised upon these six acres and less any additional expense of cultivation, harvesting and marketing which the plaintiff would have had to incur had he produced and marketed a crop upon the third of the two-acre tracts.

The judgment of the Court of Appeals is correct except insofar as its statement concerning the damages recoverable by the plaintiff is in need of amplification. To that extent it is hereby modified.

Modified and affirmed.