IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-159

No. COA21-135

Filed 15 March 2022

Wake County, No. 19 CVS 2569

MICHAEL R. GALLOWAY, as Trustee of the MELISSA GALLOWAY SNELL
LIVING TRUST DATED May 1, 2018, and as the Personal Representative of the
ESTATE OF MELISSA GALLOWAY SNELL, Plaintiff,

v.

JEFFREY SNELL, Defendant.

Appeal by Defendant from order entered 19 August 2020 by Judge A. Graham

Shirley, II, in Wake County Superior Court. Heard in the Court of Appeals 3

November 2021.

> *The Connor Law Firm, PLLC, by Gregory S. Connor, for Plaintiff-Appellee.*
>
> *Smith, Debnam, Narron, Drake, Saintsing, & Myers, LLP, by Bettie Kelley
> Sousa, for Defendant-Appellant.*

COLLINS, Judge.

¶ 1        Defendant Jeffrey Snell ("Jeff") appeals the trial court's order granting

summary judgment to Plaintiff Michael Galloway, as Trustee of the Melissa Galloway

Snell Living Trust and Personal Representative of the Estate of Melissa Galloway

Snell ("Michael"), in a declaratory judgment action to determine the beneficiary of

$1,000,000 in proceeds from certain insurance policies on the life of Melissa Galloway

Snell ("Melissa"), who was Jeff's ex-wife and Michael's sister. At issue is whether the terms of an agreement between Jeff and Melissa permitted Melissa to change the beneficiary of her life insurance policies from Jeff to a living trust Melissa set up for the benefit of the four children she shared with Jeff. Because the pertinent language of the agreement is ambiguous, the trial court erred by granting summary judgment to Michael. We reverse the trial court's order and remand for further proceedings.

## I.    Facts

Jeff and Melissa were married on 25 March 2000 and separated on or about 11 August 2017. They had four children together. Melissa filed a comprehensive lawsuit against Jeff arising from their separation. The parties entered into a Memorandum of Mediated Settlement Agreement ("Agreement") on 8 February 2018 addressing child support, spousal support, and equitable distribution.[1] The Agreement was signed by both Jeff and Melissa, their attorneys, and the mediator, and was notarized. The Agreement provides that "more formal" documents reflecting the parties' agreement will follow and that the parties shall promptly execute the formal documents when their attorneys are "reasonably satisfied that the formal documents substantially comply with the terms of this Memorandum."

The Agreement further states that "[t]he parties agree to be mutually bound

---

[1] Child custody was addressed in a separate document.

by the terms and conditions set forth herein and on the attached document." The attached document consists of "five additional pages containing terms and conditions of the settlement reached by the parties hereto." The terms and conditions provide, in part:

Equitable Distribution

. . . .

- **Non ED [Equitable Distribution] Assets/ Children's Assets:**

    o The children's treasury bonds and checking accounts would be kept intact and not used for anything absent the parties mutual agreement. Melissa and Jeff shall be joint owners of the accounts, such that no funds can be removed absent both parties' signatures. Both parties shall have online access to all statements.

    o The children's American Funds accounts shall be used for the children's education only, absent mutual agreement by the parties.

    o The [c]hildren's life insurance policies shall be kept intact. Jeff will be responsible for 90% of the premiums and Melissa shall be responsible for 10% of the premiums until the child is gainfully employed. The beneficiary shall be the children's trust (see details about trust below).

    Custody- see the consent order for custody

    Support- Child and Spousal

- Jeff to pay $4,400/mo. in child support with automatic step down of $750.00 when child support for a child terminates by statute. The amount of child support may be modified if a child begins residing primarily with Jeff, or a court orders a different amount of child support.

- Alimony to be paid as follows: commencing March 1, 2018 and continuing on the first day of each month thereafter for the next six years (February 1, 2024), unless sooner terminated as set forth below Jeff shall pay alimony in the amount of $6,000 month (taxable to Melissa, tax-deductible to Jeff); Alimony shall sooner terminate upon the death of either party, Melissa's remarriage or cohabitation, or reconciliation of the parties, whichever first occurs. The alimony obligation to be contained in SAPS and non-modifiable unless Jeff suffers an involuntary decrease in gross annual income of 20 percent or more below an annual income of $292,000. If Melissa suffers an involuntary increase in her needs, she may also seek modification of the alimony via arbitration. In no event shall the duration of alimony exceed 6 years. The parties shall submit the issue of modified alimony to arbitration, with the arbitrator's cost to be equally divided.

- Jeff will pay 100% of premium costs for kids' medical, dental, and vision insurance until the child graduates from college or reaches age 21, whichever comes first.

- Unreimbursed children's medical expenses shall be split 90% Jeff and 10% Melissa, unless modified by court order. Party incurring the expense shall submit receipt, etc. to the other party and the other party shall reimburse within 20 days of receiving expense. Unreimbursed or uncovered health care costs shall include any amount not covered by

health, dental, or vision insurance for co-pays, doctor's visits, medical and hospitalization, and reasonable and necessary dental, orthodontic, optical, ophthalmologic, psychological, psychiatric, therapeutic, or pharmaceutical or any other health care related expenses incurred for the benefit of or on behalf of the child. The parties shall explore whether they can obtain [an] HSA account to use for the children's medical expenses.

- Jeff to pay for [Eli] and [Landon]'s cell phones and Melissa to pay for [Jill] and [Jamie]'s cell phones until that child graduates from college or turns 21, whichever comes first.[2]

- As long as Jeff has support obligations or is obligated to pay for children's college as outlined below, he shall maintain a life insurance policy naming Melissa is (sic) as the beneficiary with a death benefit of $2 Million.

- Until Melissa no longer has an obligation to pay for college expenses, she shall maintain a life insurance policy naming Jeff the beneficiary with a death benefit of at least $1 Million. Jeff at his election may maintain (as owner) at his sole expense [words crossed out] life insurance policy on Melissa's life totaling $1,000,000 in death benefit.

- Additional term: the parties currently have a health insurance policy with a deductible of $10K. Prior to Melissa's flu and hospitalization, Melissa had paid almost $1K. Jeff shall pay as non-taxable support the sum of up to $9,000.00 in the form of payments directly to medical providers as the bills come due for the 2018 policy term.

---

[2] We use pseudonyms for the children to protect their identities.

- Children's trust–each party shall, within 90 days, set up a trust for the benefit of the minor children so that the children can receive any insurance proceeds in lieu of the other party being named the beneficiary. Jeff's brother shall be named as trustee of the children's trust established by Jeff, and Melissa's brother shall be named as trustee of the children's trust established by Melissa.

- Jeff shall keep Melissa on his health insurance until the date of divorce. Melissa shall be responsible for her own out of pocket expenses prospectively.

The Agreement also addresses the parties' payments for the children's private school and college, attorneys' fees, and business valuation costs.

¶ 4 At the time of signing the Agreement, Jeff had five policies on his own life, each naming Melissa as the beneficiary—two $1,000,000 policies, and three other policies in the amounts of $305,000; $882,393; and $1,695,000. Melissa had three policies on her own life, each naming Jeff as the beneficiary—two $500,000 policies and one $415,392 policy. Each of the four children also had a life insurance policy, each naming Jeff and Melissa as beneficiaries.

¶ 5 In late March or early April 2018, Melissa learned that cancer, for which she had previously been treated, had returned. On 1 May 2018, Melissa established the Melissa Galloway Snell Living Trust ("Trust"), naming the children as the beneficiaries and her brother Michael as the trustee and contingent beneficiary. On 16 May 2018, Melissa changed the beneficiary of at least her two $500,000 life

insurance policies from Jeff to the Trust.[3]

¶ 6        Melissa sent Jeff a "Separation and Property Settlement Agreement" on 23 May 2018, which she proposed as the anticipated formalization of the Agreement, that included the following terms:

> 16. Children's Trust:
>
>> a. On or before May 9, 2018, each party shall set up a trust for the benefit of the minor children. Wife shall name her brother, Michael Galloway, as the trustee for her trust, and Husband shall name his brother, Justin Snell as the beneficiary for his trust.
>>
>> b. So long as Wife has an obligation to pay for the children's college expenses as outlined hereinbelow, she shall maintain a life insurance policy on her life naming the children's trust as the beneficiary with a death benefit of at least one million dollars. So long as Husband has a child support obligation and/or college expense obligation as outlined hereinbelow, he shall maintain a life insurance policy on his life with a death benefit of at least two million dollars naming the children's trust as the beneficiary.

¶ 7        Neither Jeff nor Melissa signed the Separation and Property Settlement Agreement. On 4 June 2018, Melissa notified Jeff's attorney that she had established the Trust and changed the beneficiary of her two $500,000 life insurance policies from Jeff to the Trust. In or around February 2019, Jeff notified Northwestern Mutual,

---

[3] The proceeds in dispute are from the two $500,000 insurance policies on Melissa's life. The proceeds of Melissa's third life insurance policy, totaling $415,392, is not in dispute.

the issuer of the policies, that he was contesting the beneficiary of Melissa's two $500,000 life insurance policies. On 15 February 2019, Melissa signed an affidavit detailing her intentions for the insurance proceeds and her understanding of the original Agreement. Melissa died of cancer on 21 February 2019.

¶ 8 Michael filed a Verified Complaint on 26 February 2019 and a Verified First Amended Complaint on 23 March 2019, seeking declaratory judgment that the Agreement "unambiguously provides that Melissa may lawfully name [the Trust] as the beneficiary of the proceeds of the Life Insurance Policy" and that "Defendant has no lawful claim to the proceeds of the Life Insurance Policy because [the Trust] was created and named the beneficiary of the Life Insurance Policy."[4] Jeff filed an answer and counterclaim seeking declaratory judgment that he is the sole beneficiary of the two $500,000 insurance policies on Melissa's life and asserting a breach of contract claim against Michael, arguing that Melissa failed to keep in effect life insurance policies with a $1,000,000 death benefit payable to Jeff as beneficiary. Michael answered and moved to dismiss Jeff's counterclaims. The parties filed cross-motions for summary judgment on all claims and submitted supplemental materials, including affidavits, in support of their motions.

¶ 9 The parties' motions came on for hearing on 28 July 2020. The trial court

---

[4] Michael's complaint also alleged an unrelated claim for breach of contract regarding an equitable distribution dispute. The resolution of that issue is not on appeal.

entered an order on 19 August 2020 ("Order") wherein it concluded, in relevant part:

> 6. The terms of the Settlement Agreement are not ambiguous.
>
> 7. There is no genuine issue of material fact precluding the granting of summary judgment on [Michael]'s declaratory judgment cause of action.
>
> 8. [Michael] is entitled to summary judgment on his declaratory judgment cause of action, with the following declared:
>
>> I. The Settlement Agreement, subject to II below, required [Melissa] to maintain life insurance naming Jeff the beneficiary with a death benefit of at least $1 Million until she no longer had an obligation to pay for college expenses;
>>
>> II. The Settlement Agreement permitted Melissa Galloway Snell to change the beneficiary on insurance she owned to the children's trust in lieu of having [Jeff] named as beneficiary, including changing the beneficiary on the two life insurance policies in which [Jeff] was named as the beneficiary, with death benefits totaling $1,000,000.00, to the Melissa Galloway Snell Living Trust as beneficiary;
>>
>> III. That the Melissa Galloway [Snell] Living Trust dated May 1, 2018 is the proper sole beneficiary of all of the life insurance policies owned by Melissa Galloway Snell at her death.

¶ 10        The trial court granted Michael's motion for summary judgment and denied Jeff's cross-motion for summary judgment.

¶ 11        Jeff timely appealed.

## II. Discussion

Jeff argues that the trial court erred by granting summary judgment to Michael, and by failing to grant summary judgment to Jeff, as there was no genuine issue of material fact and Jeff was the beneficiary of Melissa's disputed insurance policies as a matter of law. In the alternative, Jeff argues that the trial court erred by granting summary judgment to Michael because there is a genuine issue of material fact as to the life insurance beneficiary under the Agreement, and therefore, that the matter should be remanded to the trial court for further proceedings.

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2020). "[A]ll inferences of fact . . . must be drawn against the movant and in favor of the party opposing the motion." *Caldwell v. Deese*, 288 N.C. 375, 378, 218 S.E.2d 379, 381 (1975) (quotation marks omitted). The standard of review for summary judgment is de novo. *Builders Mut. Ins. Co. v. N. Main Constr., Ltd.*, 361 N.C. 85, 88, 637 S.E.2d 528, 530 (2006). The interpretation of a contract is a conclusion of law that is likewise reviewed de novo. *In Re Est. of Cracker*, 273 N.C. App. 534, 538, 850 S.E.2d 506, 509 (2020).

Settlement agreements are interpreted as contracts and are governed by the

rules of contract interpretation and enforcement. *Harris v. Ray Johnson Constr. Co.*, 139 N.C. App. 827, 829, 534 S.E.2d 653, 654 (2000) (citation omitted). "Whenever a court is called upon to interpret a contract[,] its primary purpose is to ascertain the intention of the parties at the moment of its execution." *Gilmore v. Garner*, 157 N.C. App. 664, 666, 580 S.E.2d 15, 18 (2003) (quotation marks and citation omitted). "It must be presumed the parties intended what the language used clearly expresses, and the contract must be construed to mean what on its face it purports to mean." *Hartford Accident & Indem. Co. v. Hood*, 226 N.C. 706, 710, 40 S.E.2d 198, 201 (1946) (citations omitted). Under well-settled principles of legal construction, when "the language of a contract is clear and unambiguous, construction of the contract is a matter of law for the court." *Hagler v. Hagler*, 319 N.C. 287, 294, 354 S.E.2d 228, 234 (1987).

¶ 15    If, however, the language of a contract "is ambiguous and the intention of the parties is unclear, interpretation of the contract is for the [finder of fact]," and summary judgment is not appropriate. *Glover v. First Union Nat'l. Bank of N.C.*, 109 N.C. App. 451, 456, 428 S.E.2d 206, 209 (1993). A contract is ambiguous "when either the meaning of words or the effect of provisions is uncertain or capable of several reasonable interpretations." *Register v. White*, 358 N.C. 691, 695, 599 S.E.2d 549, 553 (2004). In determining whether a contract is ambiguous, "words are to be given their usual and ordinary meaning and all the terms of the agreement are to be

reconciled if possible . . . ." *Piedmont Bank and Trust Co. v. Stevenson*, 79 N.C. App.

236, 241, 339 S.E.2d 49, 52 (1986).

¶ 16    The Agreement at issue in this case includes, inter alia, the following:

> Equitable Distribution
>
> . . . .
>
> ● <u>Non-ED Assets/Children's Assets:</u>
>
>> . . . .
>>
>> o The Children's life insurance policies shall be kept intact. Jeff will be responsible for 90% of the premiums and Melissa shall be responsible for 10% of the premiums until the child is gainfully employed. The beneficiary shall be the children's trust (see details about trust below).
>
> Custody– see the consent order for custody
>
> Support– Child and Spousal
>
>> . . . .
>>
>> ● As long as Jeff has support obligations or is obligated to pay for children's college as outlined below, he shall maintain a life insurance policy naming Melissa is (sic) as the beneficiary with a death benefit of $2 Million.
>>
>> ● Until Melissa no longer has an obligation to pay for college expenses, she shall maintain a life insurance policy naming Jeff the beneficiary with a death benefit of at least $1 Million. Jeff at his election may maintain (as owner) at his sole expense life insurance policy on Melissa's life totaling $1,000,000 in death benefit.
>>
>> ● Additional term: the parties currently have a health insurance policy with a deductible of $10K. Prior to Melissa's flu and hospitalization, Melissa

had paid almost $1K. Jeff shall pay as non-taxable support the sum of up to $9,000.00 in the form of payments directly to medical providers as the bills come due for the 2018 policy term.

● Children's trust–each party shall, within 90 days, set up a trust for the benefit of the minor children so that the children can receive any insurance proceeds in lieu of the other party being named the beneficiary. Jeff's brother shall be named as trustee of the children's trust established by Jeff, and Melissa's brother shall be named as trustee of the children's trust established by Melissa.

¶ 17       The "Equitable Distribution" section addressing "Non-ED Assets/Children's Assets" provides, "The [c]hildren's life insurance policies shall be kept intact" and, "The beneficiary shall be the children's trust (see details about trust below)."[5] This subsection of the Agreement, which pertains to assets not to be distributed to the parties in equitable distribution and assets belonging to the Children, is the sole provision in the Agreement that specifically instructs that certain life insurance policies shall name the children's trust as the beneficiary.

¶ 18       Subsequently, the "Support– Child and Spousal" section requires Jeff to "maintain a life insurance policy naming Melissa is (sic) as the beneficiary with a death benefit of $2 Million" and Melissa to "maintain a life insurance policy naming Jeff the beneficiary with a death benefit of at least $1 Million." After an intervening

---

[5] We note that the "Children's trust" section requires two trusts to be set up, one by each party. The Agreement does not indicate which of these two trusts would be the beneficiary of the children's life insurance policies.

term addressing payment of certain medical bills, the parameters of the children's trust are set forth, stating that "each party shall, within 90 days, set up a trust for the benefit of the minor children so that the children can receive any insurance proceeds in lieu of the other party being named the beneficiary."

¶ 19        Jeff argues that the Agreement unambiguously required Melissa to "maintain a life insurance policy naming Jeff the beneficiary with a death benefit of at least $1 Million" until "Melissa no longer had an obligation to pay for college expenses," and the children's trust was to be the beneficiary of proceeds from other policies— including each of the children's life insurance policies, the $415,392 policy on Melissa's life, and the three policies on Jeff's life in the amounts of $305,000; $1,695,000; and $882,393.  Jeff further argues that the two $500,000 policies on Melissa's life and the two $1,000,000 policies on Jeff's life "represented carve-outs with funds going directly to the surviving spouse" and were "never intended for the Trust."

¶ 20        In the alternative, Jeff argues that the Agreement is ambiguous as to whether Melissa was required to "maintain a life insurance policy naming Jeff the beneficiary with a death benefit of at least $1 Million" until "Melissa no longer had an obligation to pay for college expenses" or whether, once a party set up a trust for the benefit of the children, the party could change the beneficiary of any insurance policy such that "the children can receive any insurance proceeds in lieu of the other party being

named the beneficiary."

Michael, by contrast, argues that the Agreement unambiguously provides that once a party sets up a trust for the benefit of the children, the party could change the beneficiary of any insurance policy such that "the children can receive any insurance proceeds in lieu of the other party being named the beneficiary."[6]

It is reasonable to interpret the terms of the Agreement as requiring Melissa to maintain a $1,000,000 life insurance policy with Jeff as the beneficiary; requiring Melissa to set up a trust for the benefit of the children within 90 days of signing the Agreement; and, after setting up the trust, naming the children's trust the beneficiary of the children's life insurance policies and other insurance policies not specified in

---

[6] In his complaint and appellate brief, Michael represents that the relevant portions of the Agreement are as follows:

> *Until Melissa no longer has an obligation to pay for college expenses, she shall maintain a life insurance policy naming Jeff the beneficiary with a death benefit of at least $1 Million…Children's Trust–each party shall, within 90 days, set up a trust for the benefit of the minor children so that the children can receive any insurance proceeds in lieu of the other party being named the beneficiary, Jeff's brother shall be named as trustee of the children's trust established by Jeff, and Melissa's brother shall be named as trustee of the children's trust established by Melissa.*

By omitting the provision regarding the children's life insurance policies, which directly references the creation of the children's trust, and by replacing the intervening term in the above-quoted language with ellipses, Michael's representation of the relevant portions is somewhat misleading.

the Agreement, "so that the children can receive any insurance proceeds in lieu of the other party being named beneficiary."

¶ 23 It is also reasonable to interpret the terms of the Agreement as requiring Melissa to maintain a $1,000,000 life insurance policy with Jeff as the beneficiary; requiring Melissa to set up a trust for the benefit of the children within 90 days of signing the Agreement; and, after setting up the children's trust, allowing Melissa to name the Trust as the beneficiary of her two $500,000 life insurance policies "in lieu of" Jeff.

¶ 24 In sum, we conclude that the language of the Agreement is ambiguous, and summary judgment is not appropriate for either party. To resolve the ambiguity, the case must be remanded to the trial court for further proceedings. *See, e.g.*, *Schenkel & Shultz, Inc. v. Hermon F. Fox & Assocs.*, 362 N.C. 269, 275, 658 S.E.2d 918, 923 (2008); *C. O. Gore v. George J. Ball, Inc.*, 279 N.C. 192, 201, 182 S.E.2d 389, 394 (1971) ("While the construction of clear and unambiguous language in a contract is for the court, it is for the [fact finder] to determine whether a particular agreement was or was not part of the contract actually made by the parties.").

¶ 25 In light of this conclusion, we do not reach Jeff's remaining arguments.

## III. Conclusion

¶ 26 We reverse the trial court's order granting summary judgment to Michael on the issue of the proper life insurance beneficiary of Melissa's insurance policies and

remand to the trial court for further proceedings.

REVERSED AND REMANDED.

Judge CARPENTER concurs.

Judge HAMPSON dissents by separate opinion.

HAMPSON, Judge, dissenting.

The Opinion of the Court captures—with characteristic precision and clarity—both the salient facts and the applicable law. I simply diverge from the majority in my analysis and conclusion. In my view, the provisions of the Agreement at issue in this case relating to child support are unambiguous and Summary Judgment was appropriately granted to Plaintiff.[7] I would affirm the trial court's 19 August 2020 Order granting summary judgment in favor of Plaintiff on the declaratory judgment claim. Therefore, I respectfully dissent.

It is apparent on the face of the Agreement that Jeff and Melissa intended the support provisions—in relevant part—to address and resolve the respective responsibilities of the parties to ensure for their children's college education beyond each of the four children reaching the age of majority. *See Altman v. Munns*, 82 N.C. App. 102, 104, 345 S.E.2d 419, 422 (1986) ("Under North Carolina law, a separation

---

[7] That is not to say there is not some level of ambiguity in other terms of the Agreement related to spousal and child support or property distribution—just that those terms are not before us. This is also not to say that the memorandum memorializing the mediated settlement agreement is itself a model of clarity and organization. It is not. However, that likely reflects the long, difficult and complicated negotiations that go into resolving these cases—involving all aspects of the parties' lives—and the efforts to capture each party's disparate concerns and demands in order to resolve the case short of the uncertainty of trial. Nevertheless, where we can discern the clear intent of the parties from the plain and unambiguous text of the agreement—even if written less than eloquently—we should.

agreement may provide for the support of the children of the marriage after they reach majority. The most common of these provisions is one providing for the payment of college expenses of the children.") (citations omitted). The Agreement accomplishes this goal by providing: (1) each party contribute a portion of their income to 529 accounts for the children; and (2) in the event a child's 529 account does not cover the costs of college, apportioning the remaining costs between Jeff (90%) and Melissa (10%) with each party's obligation limited to the cost of in-state tuition, books, fees, etc. at UNC-Chapel Hill, for up to 8 semesters per child.[8]

¶ 29 Additionally, in the provisions specifically at issue in this case, in the event of the other party's death, Jeff and Melissa agreed to secure Jeff's support obligation and their respective responsibilities for the four children's college education through life insurance policies until those obligations were complete:

> ● As long as Jeff has support obligations or is obligated to pay for children's college as outlined below, he shall maintain a life insurance policy naming Melissa is (sic) as the beneficiary with a death benefit of $2 Million.
>
> ● Until Melissa no longer has an obligation to pay for college expenses, she shall maintain a life insurance policy naming Jeff the beneficiary with a death benefit of at least $1 Million. Jeff at his election may maintain (as owner) at his sole expense life insurance policy on Melissa's life totaling $1,000,000 in death benefit.

---

[8] See my prior footnote re: potential ambiguity in other terms of the Agreement.

These two provisions anticipate: (1) life insurance coverage purchased by Jeff with Melissa as beneficiary in the event of Jeff's death in the amount of $2 million; (2) life insurance coverage purchased by Melissa with Jeff as the beneficiary in the event of Melissa's death in the amount of $1 million; and (3) a potential third policy purchased or maintained by Jeff with Jeff as the beneficiary in the event of Melissa's death in the further amount of $1 million. Next—after an unrelated provision for medical expenses and health insurance deductible payments—the Agreement provides:

> ● Children's trust–each party shall, within 90 days, set up a trust for the benefit of the minor children so that the children can receive any insurance proceeds in lieu of the other party being named the beneficiary.  Jeff's brother shall be named as trustee of the children's trust established by Jeff, and Melissa's brother shall be named as trustee of the children's trust established by Melissa.

This provision anticipates that each party will set up a trust and that the purpose of this trust is to provide an additional level of security to the parties to the Agreement by providing a mechanism whereby one spouse could (but was not required) ensure the proceeds from the insurance policy they purchased to secure their support and college expense obligation would ultimately be used for the benefit of the children and not result in a "windfall" for the opposing party.  The provision does this by allowing each party to establish a trust for the benefit of the children that may be named as the beneficiary "in lieu of the other party."  In other words, applied to this case,

Melissa was to set up a trust for the benefit of the minor children and was permitted—but not required—to name the trust as the beneficiary of the life insurance policy (or policies) she purchased to secure her college expense obligations "in lieu of" Jeff.[9]

¶ 30    Thus, the support the provisions at issue in this case unambiguously provide for the parties' obligations for college expenses of their minor children secured by life insurance policies purchased with the other party as the beneficiary with the option of a trust set up for the benefit of the children to be named the beneficiary in lieu of

---

[9] The argument advanced by Defendant—that a separate provision related to the parties' property distribution claims and addressing life insurance policies taken out by Jeff insuring the lives of the children creates ambiguity in the support provisions—is not persuasive to me. I agree that particular provision is itself somewhat ambiguous. It states: "The [c]hildren's life insurance policies shall be kept intact. Jeff will be responsible for 90% of the premiums and Melissa shall be responsible for 10% of the premiums until the child is gainfully employed. The beneficiary shall be the children's trust (see details about trust below)." As the majority notes, where the subsequent provision detailing the children's trusts to be set up anticipates two separate trusts, it is not entirely clear which trust or trusts is intended to be the beneficiary of the children's life insurance policies referenced in the property settlement. This ambiguity is not, however, before us and has no bearing on the separate support provisions. Indeed, there is not any argument before us that the property settlement and support provisions were reciprocal or non-severable. *See, e.g., Morrison v. Morrison*, 102 N.C. App. 514, 520, 402 S.E.2d 855, 859 (1991) ("There exists a presumption that the provisions of a marital agreement are separable and the burden of proof is on the party claiming that the agreement is integrated."). As such, the provisions truly at issue in this case are those support provisions. In that regard, I also disagree with the majority's footnote 6 characterizing Plaintiff's pleadings and argument focusing on those relevant provisions as "somewhat misleading." To the contrary, Plaintiff merely attempts to focus the argument on the relevant provisions.

the other party. Therefore, by the unambiguous language of the Agreement, Melissa was permitted to name the trust she set up for the benefit of the children as the beneficiary of the insurance policies she maintained to secure her college expense obligations. Consequently, the trust is the proper beneficiary of the insurance proceeds. Accordingly, Summary Judgment was properly granted to Plaintiff and should be affirmed.