THE GAS HOUSE, INC. v. SOUTHERN BELL TELEPHONE AND TELEGRAPH COMPANY

No. 74

(Filed 29 January 1976)

**1. Contracts § 10— limitation of liability clause — part of contract**
    A Limitation of Liability Clause was a part of the contract between the parties for publication of an advertisement in the Yellow

Gas House, Inc. v. Southern Bell Telephone Co.

Pages of defendant's telephone directory where plaintiff's application, signed by its president and accepted by defendant, expressly states on its face that it is "under the terms and conditions on the reverse side hereof," the Limitation of Liability Clause was the sixth of seven short paragraphs under the caption "Terms and Conditions" on the reverse side, and nothing in the record suggests that plaintiff's president was prevented or distracted from an examination of the "Terms and Conditions," or that they were misrepresented to him or that he was misled in any way concerning them by defendant's representative.

2. **Contracts § 10; Telephone and Telegraph Companies § 4— mistakes in Yellow Pages — contract limiting liability — validity**

A contract provision limiting a telephone company's liability for errors or omissions in an advertisement in the Yellow Pages of a telephone directory to the cost of the advertisement is not unreasonable and contrary to public policy.

APPEAL by defendant from the decision of the Court of Appeals, reported in 26 N.C. App. 672, 217 S.E. 2d 101, reversing summary judgment for the defendant by *Collier, J.*, at the 20 January 1975 Session of GUILFORD, *Parker, J.*, dissenting. Also, heard on certiorari upon the petition of the plaintiff.

The complaint alleges:

*First Cause of Action:* For a number of years an advertisement of the plaintiff's business was published in the "Yellow Pages" of the defendant's telephone directory for the City of Greensboro, under the classification "Gas—Liquefied Petroleum —Bottled & Bulk," which is the proper classification for the plaintiff's business. Plaintiff and defendant contracted for a republication of the plaintiff's advertisement in the 1974 directory under the same classification. The defendant broke its contract with the plaintiff by publishing such advertisement in the 1974 directory under the classification "Gas—Industrial & Medical Cylinder & Bulk," which is not the proper classification for the plaintiff's business, the plaintiff not selling any industrial or medical gases. By reason of the defendant's breach of such contract, the plaintiff has been damaged, through loss of profits, in the amount of $100,000.

*Second Cause of Action:* The plaintiff having in previous years advertised in the defendant's "Yellow Pages," as above alleged, ordered from the defendant a republication in the 1974 directory of the plaintiff's advertisement under the classification "Gas—Liquefied Petroleum—Bottled & Bulk." The defendant accepted this order. The defendant carelessly and negligently published the plaintiff's advertisement in the "Yellow Pages"

Gas House, Inc. v. Southern Bell Telephone Co.

under the classification "Gas—Industrial & Medical—Cylinder & Bulk." The plaintiff does not sell any industrial and medical gases. As the sole, direct and proximate result of the defendant's negligence, plaintiff has been damaged by the loss of profits in the amount of $100,000.

By its answer the defendant admits that it contracted with the plaintiff to publish the plaintiff's advertisement under the classification "Gas—Liquefied Petroleum—Bottled & Bulk," and that it actually published the advertisement in such directory under the classification "Gas—Industrial & Medical—Cylinder & Bulk" and also under the classification "Ranges & Stoves—Dealers." The answer denies any negligence by the defendant and the sustaining of any damage by the plaintiff by reason of such misplacement of the advertisement.

The answer of the defendant also alleges that the "Yellow Pages" section of its directory is prefaced by the following statement:

"The Yellow Pages are published for the benefit and convenience of our subscribers. Each business subscriber is listed under one general classification without cost. The Telephone Company assumes no responsibility or liability for errors or omissions occurring in the Yellow Pages. Errors or omissions will be corrected, in a subsequent issue, if reported by letter to the Company."

As a further defense the answer alleges that the defendant acted in good faith, without malice and without wanton or wilful misconduct, and that the contract between the plaintiff and the defendant provided:

"The Telephone Company's liability on account of errors in or omissions of such advertising shall in no event exceed the amount of charges for the advertising which was omitted or in which the error occurred in the then current directory issue and such liability shall be discharged by an abatement of the charges for the particular listing or advertising in which the omission occurred."

In response to the defendant's request for admissions of fact, the plaintiff admitted that the above quoted Limitation of Liability Clause appeared on the reverse side of the customer's confirmation copy of the contract, but denied that it was part of such contract. The plaintiff also admitted that the directory

Gas House, Inc. v. Southern Bell Telephone Co.

contained the above quoted preface to its Yellow Page section and that the defendant has offered to pay to the plaintiff, in satisfaction of the plaintiff's claim against the defendant, $4.70, the amount of charges for the advertising. By affidavit of its president, the plaintiff asserted that this provision, printed under the heading "Terms and Conditions," upon the back of the order form supplied by the defendant to persons desiring to place orders for "Yellow Page" advertising, was never called to its attention and it was unaware of the existence of that provision on the back of the order form.

The defendant's motion for summary judgment, pursuant to Rule 56(b) of the North Carolina Rules of Civil Procedure, was granted by Collier, J., on the ground there is no genuine issue as to any material fact and the defendant is entitled to judgment as a matter of law.

In an opinion by Chief Judge Brock, Judge Parker dissenting, the Court of Appeals reversed on the ground that the provision of the contract limiting the liability of the defendant is unreasonable in consequence of a "real disparity in bargaining power" of the parties and should not be enforced "as a matter of public policy." The Court of Appeals found "little merit in" the plaintiff's contention that the Limitation of Liability Clause was not part of the contract. The majority of the Court of Appeals reasoned that "Yellow Pages" advertising is unique in value as an advertising medium and, consequently, the parties to this action are not in positions of equal bargaining power since the plaintiff must, as a practical matter, advertise in the yellow pages of the directory and the plaintiff could not have bargained for different terms in the contract but must accept or refuse yellow page advertising on a "take it or leave it" basis. The majority of the Court of Appeals also reasoned that the Limitation of Liability Clause is unreasonable in that it places the advertiser at the mercy of the telephone company's negligence, the advertiser having no opportunity to mitigate or abate the effect of error in such advertising until publication of the next directory.

The defendant having appealed by reason of the dissent by Judge Parker in the Court of Appeals, the plaintiff's petition for certiorari was allowed in order to bring forward for review the question of whether the Limitation of Liability Clause was, indeed, a part of the contract between the parties in view of

---

---

the plaintiff's contention that the presence of this clause on the back of the order form was not brought to its attention.

The two sides of the order form, signed on its front by the president of the plaintiff and, by rubber stamp, by the agent of the telephone company, was made part of the record by stipulation. On the front thereof, immediately above the signature of the plaintiff's president, in small but legible type, it states:

> "The undersigned hereby applies to Southern Bell Tel. and Tel. Co., under the terms and conditions on reverse side hereof, for the directory advertising described herein; also for the continuance of existing directory advertising, except the advertising ordered discontinued."

On the reverse side, in small but legible type, under the caption, "TERMS AND CONDITIONS," appear seven paragraphs, the sixth of which is the above quoted Limitation of Liability Clause.

*Smith, Patterson, Follin, Curtis & James by Charles A. Lloyd for plaintiff.*

*Brooks, Pierce, McLendon, Humphrey & Leonard by C. T. Leonard, Jr., and Edward C. Winslow III for defendant.*

LAKE, Justice.

Two questions are presented for our consideration: (1) Upon this record is there a genuine issue of fact as to whether the Limitation of Liability Clause is part of the contract between the parties? (2) If such clause is part of such contract, is it contrary to public policy or so unreasonable as to make it invalid?

[1] The plaintiff's application, accepted by the defendant, expressly states on its face that it is "under the terms and conditions on reverse side hereof." On the reverse side of this single sheet of paper in small but legible type under the caption "TERMS AND CONDITIONS" appear seven short paragraphs, the sixth of which is the Limitation of Liability Clause. There also appears on the reverse side of the sheet a "KEY TO ABBREVIATIONS USED" in the description on the front of the sheet of the requested advertising. Space limitations would not permit printing of the "TERMS AND CONDITIONS" on the front of this single sheet. The reference on the front of the sheet to the terms on

the reverse thereof appears in a single sentence immediately above the signature of the applicant.

The affidavit of the plaintiff's president, who signed the application for the advertising, states that for several years prior to the occasion in question he made all arrangements for the plaintiff's yellow page advertising in the telephone directory, that "Paragraph 6 under 'TERMS AND CONDITIONS' contained on the back of the order form supplied by Southern Bell" was never called to his attention and he was "totally unaware of that paragraph." It will be observed that this falls short of saying that he was unaware of the existence of the statement of "TERMS AND CONDITIONS" on the reverse side of the document. Nothing whatever in the record suggests that he was prevented or distracted from an examination of these "TERMS AND CONDITIONS," or that they were misrepresented to him or that he was misled in any way concerning them by the defendant's representative in the year in question or in any previous year.

Unquestionably, the general rule concerning a party's failure to read a document before signing it as is stated in *Harris v. Bingham*, 246 N.C. 77, 97 S.E. 2d 453, and in *Williams v. Williams*, 220 N.C. 806, 18 S.E. 2d 364, where it is said:

> "In this State, it is held that one who signs a paper writing is under a duty to ascertain its contents, and in the absence of a showing that he was wilfully misled or misinformed by the defendant as to these contents, or that they were kept from him in fraudulent opposition to his request, he is held to have signed with full knowledge and assent as to what is therein contained."

The plaintiff relies upon *Gore v. Ball, Inc.*, 279 N.C. 192, 182 S.E. 2d 389, wherein we refused to give effect to a provision purporting to limit the liability of a seller of seed who delivered to its customer the wrong variety of seed, thus causing the customer to experience a complete failure of the desired crop. In *Gore v. Ball, Inc., supra*, we noted that the alleged limitation of the amount of recovery for such breach of contract was "dropped into" a paragraph somewhat obscurely captioned. While it appeared in small print, along with a substantial amount of other printed matter, upon the order blank taken by the customer from the seller's seed catalogue and used by him in placing the order, this provision did not appear immediately above the line for the customer's name or above the spaces

Gas House, Inc. v. Southern Bell Telephone Co.

provided for his use in listing the seed desired. It appeared over to the side of these portions of the order blank and nothing above these portions of the blank designed for the customer's use directed his attention to the alleged limitation. We said:

> "It is not contended that this limitation of the damages recoverable was otherwise called to the attention of the plaintiff. Therefore, unless its location in and upon the above mentioned documents, the size or color of the type and other circumstances, were sufficient to call this statement to the attention of the plaintiff, as being part of the contract into which he was entering, the statement would not constitute a part of that contract.
>
> *    *    *
>
> "Under these circumstances, we cannot say that, as a matter of law, the 'LIMITATION OF WARRANTY' became part of the contract of sale so as to justify a directed verdict for the defendant."

We further held that the provision purporting to limit the liability of the seller of the seed was "contrary to the public policy of this State so declared in the North Carolina Seed Law" and, even if it be deemed a part of the contract, did not bar the plaintiff from recovery of the full damages to which he would otherwise be entitled.

The above noted difference in the circumstances distinguishes this case from *Gore v. Ball, Inc., supra.* The present record indicates that the defendant used reasonable means to call to the attention of the plaintiff the Limitation of Liability Clause upon which it relies. No controversy as to the facts with reference to this question appears upon the record, and nothing is shown which will exempt the plaintiff from the application of the general rule. Consequently, in the present case, we find no error in the treatment of the Limitation of Liability Clause as part of the contract between the parties.

[2] The majority of the Court of Appeals was, however, in error in holding that the Limitation of Liability Clause is contrary to public policy, patently unreasonable and, therefore, invalid. The decision of the Intermediate Court of Appeals of Michigan in *Allen v. Michigan Bell Telephone Co.,* 18 Mich. App. 632, 171 N.W. 2d 689, supports the position of the majority of the Court of Appeals, but with virtual, if not complete, unanimity, the remaining courts which have considered the

Gas House, Inc. v. Southern Bell Telephone Co.

matter have reached the opposite conclusion. *McTighe v. New England Telephone & Telegraph Co.*, 216 F. 2d 26 (2nd Cir.) ; *Robinson, Insurance & Real Estate, Inc. v. Southwestern Bell Telephone Co.*, 366 F. Supp. 307 (W.D. Ark.) ; *Wheeler Stuckey, Inc. v. Southwestern Bell Telephone Co.*, 279 F. Supp. 712 (W.D. Okl.) ; *Georges v. Pacific Tel. & Tel. Co.*, 184 F. Supp. 571 (D.C. Ore.), *Wilson v. Southern Bell Tel. & Tel. Co.* (La. Ct. App.) 194 So. 2d 739; *Baird v. Chesapeake & Potomac Telephone Co.* (Md. Ct. App.), 208 Md. 245, 117 A. 2d 873; *Mitchell v. Southwestern Bell Telephone Co.* (Mo. Ct. App,), 298 S.W. 2d 520; *State of Montana ex rel. Mountain States Tel. & Tel. Co. v. District Court*, 160 Mont. 443, 503 P. 2d 526; *Federal Building Service v. Mountain States Tel. & Tel. Co.*, 76 N.M. 524, 417 P. 2d 24; *Hamilton Employment Service v. New York Telephone Co.*, 253 N.Y. 468, 171 N.E. 710: *Cunha v. Ohio Bell Telephone Co.*, 26 Ohio Misc. 267, 271 S.E. 2d 321; *Pride v. Southern Bell Tel. & Tel. Co.*, 244 S.C. 615, 138 S.E. 2d 155; *Smith v. Southern Bell Tel. & Tel. Co.*, 51 Tenn. App. 146, 364 S.W. 2d 952; *Wade v. Southwestern Bell Telephone Co.* (Texas Civ. App.), 352 S.W. 2d 460, 92 A.L.R 2d 913; Annot., 92 A.L.R. 2d 917, 935.

The general principle governing the validity of contracts against the charge that they are unreasonable is thus stated in 14 Williston on Contracts, 3d Ed, § 1632:

" 'People should be entitled to contract on their own terms without the indulgence of paternalism by courts in the alleviation of one side or another from the effects of a bad bargain. Also, they should be permitted to enter into contracts that actually may be unreasonable or which may lead to hardship on one side. It is only where it turns out that one side or the other is to be penalized by the enforcement of the terms of a contract so unconscionable that no decent, fairminded person would view the ensuing result without being possessed of a profound sense of injustice, that equity will deny the use of its good offices in the enforcement of such unconscionability.' "

The leading case on the question of the validity of such a Limitation of Liability Clause in a contract for telephone directory advertising is *McTighe v. New England Tel. & Tel. Co.*,

*supra,* where Circuit Judge Medina, speaking for the Court of Appeals for the Second Circuit, said:

> "The publication of the classified directory [i.e., the "yellow pages"] * * * is wholly a matter of private contract and contracts relating thereto are not required to be filed with the Public Service Commission [of Vermont] which has no jurisdiction except over matters relating to the public utility services rendered by the company and the rates relative thereto.

> *       *       *

> "True it is that the courts will scrutinize with care clauses exonerating public utility companies, such as railroads, telegraph and telephone companies and others, from liability for the consequences of their own negligence, *with reference to the public services rendered by them.* The fact that the member of the public patronizing such public utility companies must take the contract proffered by the company or forego using the service has enabled the courts to inquire into the reasonableness of the type of clause now under discussion and by this test the clause applicable to the alphabetical [i.e., white pages] directory would as a matter of contract law be considered unreasonable and unenforceable. But the principle which enables courts to strike down and condemn clauses affecting the performance by the company of its functions as a public utility is limited to the area in which the public services are rendered and has no application whatever to the domain in which the public utility may freely contract in its private capacity. The obtaining of the services of the public utility by way of transportation or communications or providing gas or electricity is quite apart from the leases, advertising contracts and a host of other miscellaneous agreements commonly made by members of the public with public utility companies. If there be some disparity in the bargaining power of the contracting parties it is no more than may be found generally to exist; and the courts follow the general rule that the parties are free to contract according to their own judgment and the reasonableness of their engagements will not be entered into." (Emphasis added.)

The reason for the rule that a common carrier, or other public utility, may not contract away its liability for negligence in the performance of its public utility service and may not

claim the benefit of an unreasonable contract limiting the amount of its liability therefor, is that every member of the public is entitled by law to demand such service with full liability at a reasonable rate therefor. For the company to refuse to serve unless the customer agrees to release it from liability for its negligent performance of its obligation to serve would be a denial of this legal right in the would-be customer. Thus, such a contract limiting the liability of the carrier, or other public utility, unless reasonable, is contrary to public policy and invalid. This limitation upon the right of the common carrier, or other public utility, to contract applies, however, only to its undertakings to render services which fall within its public service business. For example, a telephone company leasing office space to a tenant, or an electric power company selling an electric stove, is as free to contract with reference to those matters as is any other owner of a building or dealer in electric stoves. The business of carrying advertisements in the yellow pages of its directory is not part of a telephone company's public utility business.

The inequality of bargaining power between the telephone company and the businessman desiring to advertise in the yellow pages of the directory is more apparent than real. It is not different from that which exists in any other case in which a potential seller is the only supplier of the particular article or service desired. There are many other modes of advertising to which the businessman may turn if the contract offered him by the telephone company is not attractive.

We find in this record no basis for a conclusion that the application of the Limitation of Liability Clause could lead to a result so unreasonable as to shock the conscience. In the absence of most exceptional circumstances, which do not appear in this record, the insertion of a "Yellow Page" advertisement under the wrong classification heading will not produce a different result from that which would follow a complete omission of the advertisement from the directory. It would be virtually, if not completely, impossible to determine what portion of the business done by an advertiser is attributable to its use of "Yellow Page" advertising. There are many factors which enter into periodic fluctuations in the volume of business done by a seller of goods. The purpose of the Limitation of Liability Clause is to protect the telephone company from the danger of verdicts primarily speculative in amount. This is not an unreasonable objective. In

this respect, the telephone company is not in a different position from the local newspaper, radio or television station, or other advertising media.

The omission of an advertisement from the yellow pages of the directory leaves the would-be advertiser in the same position he would have occupied had he made no contract at all with the telephone company. In this respect, the present case is easily distinguishable from *Gore v. Ball, Inc., supra.* The farmer who contracts to purchase one variety of seed and receives a different, relatively useless variety, plants it in good faith and cultivates the resulting crop until the mistake becomes apparent, is in an entirely different position from that which he would have occupied had he not made any purchase of seed at all. The breach of contract by his supplier has caused him to lose his labor, fertilizer and the use of his land. As we said in *Gore v. Ball, Inc., supra:*

> "To permit the supplier of seed to escape all real responsibility for its breach of contract by inserting therein a skeleton warranty, such as was [there] used, would be to leave the farmer without any substantial recourse for his loss.

> "While there is no element of personal safety involved in the use of falsely labeled seed, such as there is in the case of a defective automobile, the breach of the contract of sale of seed does not, like the breach of warranty of an automobile part, *sometimes* cause disaster. It *always* causes disaster. Loss of the intended crop is inevitable. The extent of the disaster is measured only by the size of the farmer's planting."

Furthermore, as we held in *Gore v. Ball, Inc., supra,* by reason of the North Carolina Seed Law, such a Limitation of Liability Clause in a seed contract is contrary to the public policy of this State. There is no comparable statute relating to telephone directory advertising.

The present case is likewise distinguishable from *Henningsen v. Bloomfield Motors,* 32 N.J. 358, 161 A. 2d 69, 75 A.L.R. 2d 1, also relied upon by the plaintiff. There the New Jersey Court held invalid, as against public policy, a provision for limited liability of an automobile manufacturer for damage resulting from a defective part of the automobile sold. As the New Jersey Court said, the public has an interest in the safe

construction of motor vehicles and it would be contrary to that interest to permit manufacturers to insert in their sale contracts provisions which naturally tend to minimize care in the manufacture of such dangerous instrumentalities. Furthermore, the potential injury to the unsuspecting purchaser of a defective automobile is such that he certainly cannot be said to be left by a breach of the warranty of fitness in as good a position as he would have occupied had he made no contract for the purchase of the automobile. To limit to cost of replacement the recovery for severe personal injury or death due to the manufacturer's negligence in the making or installing of an automobile part, as the contract involved in the Henningsen case purported to do, would be shockingly unreasonable. As the New Jersey Court said: "An instinctively felt sense of justice cries out against such a sharp bargain." There is no such comparable sharp bargaining in the present case but, on the contrary, a reasonable effort of the telephone company to protect itself against possible gross injustice through a wholly speculative verdict.

The decision of the Court of Appeals is, therefore, reversed and this matter is remanded to that court for the entry by it of a judgment affirming the judgment of the Superior Court in favor of the defendant.

Reversed and remanded.