VIVEK NAIK and KASHMIRA NAIK, Plaintiffs,
v.
HR PROVIDENCE ROAD, LLC, Defendant.
No. COA07-1285
North Carolina Court of Appeals
Filed June 3, 2008
This case not for publication
Templeton & Raynor, P.A., by Kenneth R. Raynor, for Plaintiff-Appellants.
Parker Poe Adams & Bernstein LLP, by John W. Francisco and Scott S. Addison, for Defendant-Appellee.
ARROWOOD, Judge.
Vivek Naik and Kashmira Naik (Plaintiffs) appeal from order entered 7 August 2007, dismissing Plaintiffs' complaint with prejudice. We affirm.
The relevant facts tend to show the following: On 25 August 2004, Plaintiffs and HR Providence Road, LLC, (Defendant) entered into an agreement for the purchase and sale of real property located within the Rea Professional Building in the Rea Village development in Charlotte, North Carolina, for use by Quantum Residential Mortgage Corp. Section 6(d) of the contract stated the following:
Seller represents and warrants that, to the best of Seller's knowledge, use of theProperty for its Intended Use will not violate any private restrictions or governmental regulations.
The contract required Plaintiffs to make an earnest money deposit of $10,000.00 "upon execution of this Agreement[,]" and $5,000.00 "upon completion of vertical construction of The Rea Professional Building." The Agreement stated that the earnest money "IS TO BE DEPOSITED IN AN INTEREST BEARING ACCOUNT, TO BE APPLIED AS PART PAYMENT OF THE PURCHASE PRICE OF THE PROPERTY AT THE TIME SALE IS CLOSED, OR DISBURSED AS AGREED UPON UNDER THE PROVISIONS OF SECTION 9 HEREIN." Section 9 of the contract stated that "[i]n the event this offer is not accepted, or in the event that any of the conditions hereto are not satisfied, or in the event of a breach of this Agreement by the Seller, then the Earnest Money shall be returned to the Buyer, and this Agreement shall be terminated without further liability to either Buyer or Seller." (emphasis added).
Before Defendant entered into the foregoing agreement with Plaintiff, Defendant entered into a lease with Bank of America for property located in the Rea Village development. On 20 January 2005, Bank of America notified Defendant that Plaintiffs' planned use of the property violated Bank of America's exclusive covenant in its lease. In Bank of America's ground lease, "Landlord agreed not to sell or lease any portion of the Office Park to a financial institution or other entity for any `Banking Use' which defined term includes . . . making loans to the general public." Bank of America gave Defendant "formal notice that the Bank will not granta waiver of the exclusive use covenant[,]" and that Bank of America considered Plaintiffs' proposed business, Quantum Residential Mortgage Corp., to be a wholesale banking operation.
On 14 December 2005, Defendants wrote the following letter to Plaintiffs:
Bank of America continues to contend that the "exclusive banking use" covenant in its ground lease prevents the operation of a residential mortgage broker/originator in the referenced building because your company is in the business of originating residential loans to the general public and serving as broker to other banks in competition with Bank of America. Despite our extensive attempts to obtain a waiver by Bank of America, the bank has remained committed to the opinion that it will never agree to such a waiver.
Accordingly, pursuant to Section 9 of the Agreement for the Purchase and Sale of Real Property dated August 25, 2004 (the "Agreement"), HR Providence Road, LLC (the "Seller") hereby notifies you that it is not able to accept your offer to purchase the subject property. Pursuant to the Agreement, the Seller attaches hereto and returns and forfeits back to you the Earnest Money previously paid to date in the amount of $10,000. The Agreement is hereby terminated.
Defendant terminated the contract with Plaintiff, concluding that Defendant was "legally prohibited from ultimately closing on the sales transaction."
On 23 February 2007, Plaintiffs filed an action alleging that "[t]he actions of the Defendant constituted a breach of contract[;]" that "[t]he Plaintiffs have been damaged in an amount not less than $15,000 due to the breach[;]" and that "[t]he Plaintiffs are entitled to an order of the Court compelling the Defendant to specifically perform the contract[.]" On 20 March 2007, Defendant answered that "it was legally prohibited from ultimately closing on the real estate sales transaction at issue and conveying fee simple marketable title[;]" that "it tendered and returned to the Plaintiffs the Earnest Money deposit previously paid by them[;]" and that "Section 9 . . . [of] the contract required [Defendant] to return the Earnest Money deposit to [Plaintiff on the occasion of breach, after which] the Contract would be terminated without further liability to either [Plaintiff] or [Defendant]." On 22 May 2007, Plaintiffs replied, "[t]he provisions of the contract between the parties which purports to limit the Plaintiffs' damages to a return of their earnest money constitute an unreasonable liquidated damages provision, and therefore is not subject to enforcement."
On 27 June 2007, Defendant filed a motion for summary judgment on the grounds that there "is no genuine issue of material fact and the Defendant is entitled to judgment . . . as a matter of law[.]" Defendant submitted the affidavit of Thomas Mussoni, Defendant's agent, stating that Bank of America "had a pre-existing ground lease at the development which, among other things, granted Bank of America an exclusive use to conduct `retail or wholesale banking operations['](including but not limited to `making loans to the general public')." Although Defendant "tendered and returned . . . the $10,000 earnest money deposit[,]" Plaintiffs "did not accept or deposit the returned earnest money payment as tendered[.]"
On 7 August 2007, the trial court entered judgment for Defendant, concluding that "there are no genuine issues [of]material fact and that the Defendant . . . is entitled to judgment as a matter of law." The court ordered Defendant to "return the $10,000 Earnest Money Deposit to the Plaintiffs, [and] that the Contract . . . is terminated." The court dismissed Plaintiff's action with prejudice. From this judgment, Plaintiff appeals.
Plaintiffs argue on appeal that the trial court erred in granting Defendant's motion for summary judgment because the evidence tended to show a genuine issues of material fact regarding whether Section 9 was an unreasonable and unenforceable liquidated damages clause, and whether Section 9 barred Plaintiffs' claim for specific performance.
"Summary judgment is appropriate `if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that [a] party is entitled to a judgment as a matter of law.' On appeal of a trial court's allowance of a motion for summary judgment, we consider whether, on the basis of materials supplied to the trial court, there was a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law." Summey v. Barker, 357 N.C. 492, 496, 586 S.E.2d 247, 249 (2003) (quoting N.C.G.S. § 1A-1, Rule 56(c)).

Earnest Money
In their first argument, Plaintiffs contend that the trial court erred by granting Defendant's motion for summary judgmentbecause the language in the contract between Plaintiffs and Defendant was an unreasonable liquidated damages clause, and thus, should not have been enforced. We disagree.
In this case the parties plainly agreed that "[i]n the event this offer is not accepted, or in the event that any of the conditions hereto are not satisfied, or in the event of a breach of this Agreement by the Seller, then the Earnest Money shall be returned to the Buyer, and this Agreement shall be terminated without further liability to either Buyer or Seller." (emphasis added). Plaintiffs essentially argue that because the foregoing clause, regarding the payment and disbursement of earnest money, stipulated Plaintiffs' sole remedy  the reimbursement of earnest money  in the event of breach by Defendant, the clause must necessarily be considered an improper liquidated damages clause. This, we decline to conclude.
In Blaylock Grading Company, LLP v. Neal Smith Engineering, Inc., __ N.C. App. __, __, __ S.E.2d __, __ (2008) (Filed 1 Apr. 2008, No. COA07-615), this Court reiterated our Supreme Court's reasoning in Gas House, Inc. v. Southern Bell Telephone Co., 289 N.C. 175, 176-77, 221 S.E.2d 499, 500-01 (1976), overruled on other grounds by State ex rel. Utilities Comm. v. Southern Bell, 307 N.C. 541, 299 S.E.2d 763 (1983), regarding the validity of limited liability clauses. We find the Court's analysis in Blaylock Grading applicable to the instant case:
"People should be entitled to contract on their own terms without the indulgence of paternalism by courts in the alleviation of one side or another from the effects of a badbargain. Also, they should be permitted to enter into contracts that actually may be unreasonable or which may lead to hardship on one side. It is only where it turns out that one side or the other is to be penalized by the enforcement of the terms of a contract so unconscionable that no decent, fairminded person would view the ensuing result without being possessed of a profound sense of injustice, that equity will deny the use of its good offices in the enforcement of such unconscionability."
Blaylock Grading, __ N.C. App. at __, __ S.E.2d at __ (quoting Gas House, Inc., 289 N.C. at 182, 221 S.E.2d at 504 (internal quotation marks omitted). In Blaylock Grading, this Court reasoned that because there were "no formation irregularities in the contract[;] . . . no inequality in bargaining position between the two parties[;]" and because the "[p]laintiff and [the] defendants [were] sophisticated, professional parties who conducted business at arms' length, and the `result' of the contract d[id] not elicit a `profound sense of injustice[,]' . . . [and] the Risk Allocation provision was not void[.]" Blaylock Grading, __ N.C. App. at __, __ S.E.2d at __ (quoting Gas House, 289 N.C. at 182, 221 S.E.2d at 504).
In the instant case, no evidence indicated that Plaintiffs' agreement that Defendant could dissolve the contract by tender of Plaintiffs' earnest money  was unjust, oppressive or unconscionable. See Johnson v. Smith, Scott & Assoc., Inc., 77 N.C. App. 386, 390, 335 S.E.2d 205, 208 (1985). Plaintiff was not "penalized by the enforcement of the terms of [the] contract[.]" Blaylock Grading __ N.C. App. at __, __ S.E.2d at __. Thus, wefind no basis to prevent the enforcement of the agreement as written.
Furthermore, even assuming arguendo the provision was "in the nature of a provision for liquidated damages[,]" Johnson, 77 N.C. App. at 390, 335 S.E.2d at 208, the provision was not an illegal penalty. See Id. (holding that breach of contract by the plaintiffs, which resulted in the forfeiture of the plaintiffs' earnest money, was "in the nature of a provision for liquidated damages" but not an illegal penalty, because no evidence indicated that "the amount forfeited pursuant to the provision [was] unjust, oppressive, or disproportionate to the damages that would result, or did in fact result, from the breach of the contract"); see also East Carolina Internal Med., P.A. v. Faidas, 149 N.C. App. 940, 945, 564 S.E.2d 53, 56 (2002) (stating that "[l]iquidated damages clauses which are reasonable in amount are enforceable as part of a contract and are not seen as penalty clauses"); Knutton v. Cofield, 273 N.C. 355, 361, 160 S.E.2d 29, 34 (1968) (stating that "[a] penalty is a sum which a party similarly agrees to pay or forfeit . . . as a punishment, the threat of which is designed to prevent the breach, or assecurity . . . to insure that the person injured shall collect his actual damages").
"People should be entitled to contract on their own terms without the indulgence of paternalism by courts in the alleviation of one side or another from the effects of a bad bargain." Blaylock Grading, __ N.C. App. at __, __ S.E.2d at __. We conclude that the trial court did not err by entering judgment enforcing thecontract as written and concluding that there was no genuine issue of material fact regarding whether the earnest money provision in the contract was an unreasonable penalty. This assignment of error is overruled.

Specific Performance
In their second argument, Plaintiffs contend that the trial court erred by granting Defendant's motion for summary judgment because Section 9 did not bar Plaintiffs' claim in equity for specific performance. We disagree.
"The remedy of specific performance is an equitable remedy of ancient origin[; i]ts sole function is to compel a party to do precisely what he ought to have done without being coerced by the court." McLean v. Keith, 236 N.C. 59, 71, 72 S.E.2d 44, 53 (1952) (citation omitted). "Specific performance is used to compel a party to meet his contractual obligations; it is not used to rewrite a contract or to create new contractual duties." Mizell v. Greensboro Jaycees, 105 N.C. App. 284, 289, 412 S.E.2d 904, 908 (1992) (citing 12 N.C. Index 3d, Specific Performance § 1 (1978)). If the language of a contract is clear and free from ambiguity, "the courts must enforce the contract as written and cannot, under the guise of interpretation, rewrite the contract or impose [terms] on the parties not bargained for and found within the contract." State ex rel. Utilities Comm. v. Thrifty Call, 154 N.C. App. 58, 63, 571 S.E.2d 622, 626 (2002) (internal quotation marks omitted). In the instant case, Section 9 of the contract is clear and free from ambiguity, stating that "[i]n the event this offer is notaccepted, or in the event that any of the conditions hereto are not satisfied, or in the event of a breach of this Agreement by the Seller, then the Earnest Money shall be returned to the Buyer, and this Agreement shall be terminated without further liability to either Buyer or Seller." (emphasis added). The terms of the contract, to which both Plaintiff and Defendant agreed, clearly and unambiguously permits Defendant to terminate the agreement and return the Earnest Money to Plaintiff. See Fairview Developers, Inc. v. Miller, __ N.C. App. __, __, 652 S.E.2d 365, 368 (2007) (quoting Woods v. Nationwide Mutual Ins. Co., 295 N.C. 500, 506, 246 S.E.2d 773, 777 (1978) (stating that "If only one reasonable interpretation [of a contract] exists, the courts must enforce the contract as written; they may not, under the guise of construing an ambiguous term, rewrite the contract or impose liabilities on the parties not bargained for and found therein")). To hold, as Plaintiffs argue, that the trial court erred in failing to order specific performance, would be tantamount to rewriting the contract between Plaintiff and Defendant to create new contractual duties. This, we decline to do.
The trial court did not err in concluding that there is no genuine issue as to any material fact and Defendant is entitled to summary judgment as a matter of law. Accordingly, we uphold the trial court's judgment granting summary judgment for Defendant.
Affirmed.
Judges MCCULLOUGH and STEELMAN concur.
Report per Rule 30(e).