Kornegay Family Farms, LLC v. Cross Creek Seed, Inc., 2016 NCBC 30.

STATE OF NORTH CAROLINA

COUNTY OF JOHNSTON

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
15 CVS 1646

KORNEGAY FAMILY FARMS, LLC, )
)
   Plaintiff, )
)
 v. )
)
CROSS CREEK SEED, INC., )
)
   Defendant. )
)

STATE OF NORTH CAROLINA

COUNTY OF PERSON

15 CVS 338

MICHAEL CLAYTON, )
)
   Plaintiff, )
)
 v. )
)
CROSS CREEK SEED, INC., )
)
   Defendant. )
)

STATE OF NORTH CAROLINA

COUNTY OF FRANKLIN

15 CVS 428

EDWARDS & FOSTER FARMS, )
)
   Plaintiff, )
)
 v. )
)
CROSS CREEK SEED, INC., )
)
   Defendant. )
)

STATE OF NORTH CAROLINA

COUNTY OF VANCE                                      15 CVS 551

MATTHEW W. GRISSOM and )
T. WAYNE GRISSOM, )
                     )
        Plaintiffs, )
                     )
       v. )
                     )
CROSS CREEK SEED, INC., )
                     )
        Defendant. )
                     )

STATE OF NORTH CAROLINA

COUNTY OF FRANKLIN                         15 CVS 427

DAVID LEE SMITH, )
                     )
        Plaintiff, )
                     )
       v. )
                     )
CROSS CREEK SEED, INC., )
                     )
        Defendant. )
                     )

STATE OF NORTH CAROLINA

COUNTY OF SURRY                               15 CVS 939

RICKY SNOW, )
                     )
        Plaintiff, )
                     )
       v. )
                     )
CROSS CREEK SEED, INC., )
                     )
        Defendant. )
                     )

STATE OF NORTH CAROLINA

COUNTY OF HARNETT

TRENT WILSON FARMS, LLC,

        Plaintiff,

        v.

CROSS CREEK SEED, INC.,

        Defendant.

15 CVS 1202

)
)
)
)
)
)
)
)
)
)
)
)

STATE OF NORTH CAROLINA

COUNTY OF JOHNSTON

W.I. WELLONS & SONS, LLC and
W. BRYANT WELLONS,

        Plaintiffs,

        v.

CROSS CREEK SEED, INC.,

        Defendant.

15 CVS 2064

)
)
)
)
)
)
)
)
)
)
)
)

## ORDER & OPINION

{1}     THIS MATTER is before the Court on three summary-judgment motions by Defendant Cross Creek Seed, Inc. ("Cross Creek"): (1) Defendant's Motion for Partial Summary Judgment Against Plaintiffs Trent Wilson Farms, LLC, W.I. Wellons & Sons, LLC and W. Bryant Wellons, and David Lee Smith, (2) Defendant's Motion for Partial Summary Judgment Against Plaintiffs Kornegay Family Farms, LLC and Edwards & Foster Farms, and (3) Defendant's Motion for Partial Summary Judgment Against Plaintiffs Michael Clayton, Matthew W. Grissom and T. Wayne Grissom, and Ricky Snow (collectively, "Motions").  There

are differences among the three Motions based on the manner by which the various Plaintiffs purchased seed from Cross Creek, but each motion presents the common issue of whether Cross Creek is entitled to enforce a limitation of remedies that appears on the label of its seed containers and purports to limit each Plaintiffs' recovery to the purchase price of the seed. The Court concludes that this limitation must fail based on the public policy underlying the North Carolina Seed Law ("Seed Law"), N.C. Gen. Stat. §§ 106-277 to -277.34 (2015), as interpreted and applied by the North Carolina Supreme Court. Thus, the Motions are DENIED.

*Ellis & Parker PLLC by L. Neal Ellis, Jr. and Jolly, Williamson & Williamson by John P. Williamson, Jr. for Plaintiffs.*

*Poyner Spruill LLP by Steven B. Epstein, Andrew H. Erteschik, and Caitlin M. Goforth for Defendant.*

Gale, Chief Judge.

## I.     INTRODUCTION AND SUMMARY OF RULING

{2}     The Court enters this Order & Opinion in each of the eight above-captioned cases involving claims by farmers who purchased certified tobacco seed from Cross Creek that produced abnormal tobacco crops. The eight cases are pending in six different counties and are consolidated for filing purposes only. *Kornegay Family Farms, LLC v. Cross Creek Seed, Inc.*, No. 15 CVS 1646, is the master pleading file.

{3}     Each container of Cross Creek's seed bears a label with language that purports to limit the purchaser's recovery to the purchase price of the seed. Some Plaintiffs contend that this limitation never became part of their sales contract, for one reason or another. The Court need not reach those separate arguments to resolve the issue presented; it has assumed, for purposes of resolving the Motions, that the limitation was part of each sales contract. Therefore, the Court addresses the question whether the limitation of remedies is enforceable.

{4}     As presented, the issue is limited to factual circumstances in which the seed purchased by Plaintiffs was mislabeled. Solely for purposes of the present Motions, Cross Creek asks the Court to accept Plaintiffs' contention that each

container of seed sold to Plaintiffs was mislabeled, meaning that the seed in the container was not the type of seed indicated on the label. Cross Creek indicates that it will tender judgment to each Plaintiff for the purchase price of the seed if the Court holds that Cross Creek's limitation of remedies is enforceable. On the other hand, if the Court holds that the limitation is not enforceable, Cross Creek reserves all defenses to any claim that its seed was mislabeled, was otherwise defective, or was the cause of any losses claimed by Plaintiffs.

{5} To resolve the Motions, the Court must construe how two North Carolina Acts apply to the assumed facts on which the Motions are based.[1] The Uniform Commercial Code ("UCC") embodies a public policy of allowing freedom of contract in the commercial environment and clearly allows a merchant to limit buyers' remedies in appropriate circumstances. *See* N.C. Gen. Stat. § 25-2-719. The North Carolina Supreme Court has interpreted a merchant's ability to limit remedies under the UCC to include the ability to limit a buyer's recovery to the purchase price of seed in cases where seed has not been mislabeled. *See Billings v. Joseph Harris Co.*, 290 N.C. 502, 508–09, 226 S.E.2d 321, 324–25 (1976). On the other hand, the Seed Law, as interpreted by the supreme court in a decision issued before North Carolina adopted the UCC, *Gore v. George J. Ball, Inc.*, expresses a public policy that prohibits a limitation of remedies that limits a buyer's recovery to the purchase price of seed if the seed was mislabeled. 279 N.C. 192, 208, 182 S.E.2d 389, 398 (1971) (pertaining to a sale that took place in 1965, prior to the UCC's effective date of 1967). The North Carolina Supreme Court has never squarely ruled on whether the public policy relied upon in *Gore* survived the UCC's enactment, although it had an opportunity to do so in *Billings v. Joseph Harris Co.* The supreme court has not revisited its holding in *Gore* in the last forty years.

{6} The Court is, of course, bound by precedents established by our supreme court. After reviewing *Gore* and subsequent decisions of the North

---

[1] The current version of the Seed Law was enacted in 1963. *See* Act of June 25, 1963, ch. 1182, 1963 N.C. Sess. Laws 1626 (codified as amended at N.C. Gen. Stat. §§ 106-277 to -277.34). North Carolina adopted the UCC in 1965, with an effective date of July 1967. Act of May 26, 1965, ch. 700, secs. 25A-40 to -184, 1965 N.C. Sess. Laws 768, 775–811 (codified as amended at N.C. Gen. Stat. §§ 25-2-101 to -725 (2015)).

Carolina Supreme Court that have construed *Gore*, the Court concludes that *Gore*'s central holding, which is based on the public policy expressed by the Seed Law, survived North Carolina's enactment of the UCC. It further concludes that if confronted with the exact question presented by the Motions, the supreme court would hold that a limitation of remedies that limits a buyer's recovery to the purchase price of the seed is unenforceable when the transaction falls within the purview of the Seed Law due to seed mislabeling, even if the limitation was otherwise integrated into the sales contract between the parties.

{7} Thus, if Plaintiffs ultimately prove that Cross Creek's seed was mislabeled, and that the mislabeled seed caused their losses, they will be entitled to recover damages within the range allowed by the remedies provisions of the UCC, regardless of the limitation that appears on the seed labels. The cases shall proceed with this controlling principle as the law of the case.

{8} The Court acknowledges Cross Creek's argument that no North Carolina decision involving a transaction governed by the UCC has invalidated a limitation of remedies in a contract between commercial merchants on grounds of unconscionability. However, because the Court assumes for purposes of this Order & Opinion that the seed was mislabeled and concludes that the Seed Law bars it from enforcing the limitation, the Court need not separately determine whether the limitation of remedies is also unenforceable under the UCC's proscription against limitations that fail of their essential purpose or are otherwise unconscionable. *See* N.C. Gen. Stat. § 25-2-219(2), (3). The Court leaves open this issue but notes that *Billings* strongly suggests that Plaintiffs would not prevail on an unconscionability or failure-of-essential-purpose argument.

## II.   STANDARD OF REVIEW

{9} Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. R. Civ. P. 56(c). "Summary judgment is improper if any material fact is subject to dispute." *Culler v. Hamlett*, 148 N.C.

App. 389, 391, 559 S.E.2d 192, 194 (2002). The movant bears the burden of proving that there is no triable issue. *Dalton v. Camp*, 353 N.C. 647, 651, 548 S.E.2d 704, 707 (2001). Once the movant has met that burden, the burden shifts to the nonmoving party to produce a forecast of evidence that demonstrates facts showing that it can establish a prima facie case at trial. *Austin Maint. & Constr., Inc. v. Crowder Constr. Co.*, 224 N.C. App. 401, 407, 742 S.E.2d 535, 540 (2012). The Court must view all of the presented evidence in the light most favorable to the nonmoving party. *Dalton*, 353 N.C. at 651, 548 S.E.2d at 707. Here, for purposes of the Motions only, the essential facts necessary to resolve the Motions are not contested.

## III.  FURTHER FACTUAL BACKGROUND

{10}   The Court does not make findings of fact when it rules on a motion for summary judgment, but it may summarize facts to provide context for its ruling. *See, e.g.*, *Se. Surs. Grp., Inc. v. Int'l Fid. Ins. Co.*, No. COA14-815, 2015 N.C. App. LEXIS 1036, at *2 (Dec. 15, 2015).

{11}   Plaintiffs are commercial farmers with substantial farming operations that include growing tobacco. Each Plaintiff purchased tobacco seed that was bred, developed, and produced by Cross Creek. Some Plaintiffs purchased seed directly from Cross Creek, and others purchased Cross Creek's seed from a third-party distributor.

{12}   Cross Creek has not conceded mislabeling except for purposes of these Motions. Plaintiffs have made claims that the seed was mislabeled and subject to review by the North Carolina Seed Board under the Seed Law. *See* N.C. Gen. Stat. § 106-277.30. The Seed Board conducted extensive investigations in response to Plaintiffs' complaints. The Court has not reviewed or considered any portion of those investigations, and it need not consider or address any contested issues of causation to resolve the Motions.

{13}   The label printed on each container of Cross Creek's seed sold to Plaintiffs includes a section entitled "**NOTICE TO BUYER – LIMITATIONS OF WARRANTIES AND REMEDIES**." (Aff. Samuel Baker Ex. E.) That notice is an

integrated paragraph that purports to limit a buyer's recovery to the purchase price of the seed and exclude recovery for any incidental or consequential damages. The paragraph reads:

> BUYER'S EXCLUSIVE REMEDY FOR ANY CLAIM OR LOSS RESULTING FROM BREACH OF WARRANTY, BREACH OF CONTRACT, NEGLIGENCE, OR ANY OTHER LEGAL THEORY (INCLUDING BUT NOT LIMITED TO INCIDENTAL OR CONSEQUENTIAL DAMAGES), SHALL BE LIMITED TO REPAYMENT OF THE PURCHASE PRICE OF THE SEED WHICH CAUSED THE ALLEGED LOSS.

(Aff. Samuel Baker Ex. E.) The notice also states the following:

> Buyer agrees that he is an experienced tobacco farmer, and as such is a Merchant within the meaning of the Uniform Commercial Code. Buyer agrees that the above limitation of remedy is not unconscionable. Buyer further agrees that if Cross Creek Seed, Inc. provides a return of the purchase for the tobacco seed, this limitation shall not be deemed to have failed of its essential purpose.

(Aff. Samuel Baker Ex. E.)

{14}   Plaintiffs now seek to recover the costs and losses associated with the defective tobacco plants. Collectively, Plaintiffs seek to recover losses totaling in the millions of dollars.

## IV.   ANALYSIS

{15}   To resolve the Motions, the Court must construe a trilogy of cases from our supreme court. Specifically, the Court must determine whether the public policy of the Seed Law expressed in the first of the three supreme court cases, *Gore*, still applies in light of the UCC's policy of liberally allowing merchants to place limitations on buyers' remedies in the commercial sales context.

{16}   The Court discusses each of the three opinions in chronological sequence.

### A.   *Gore v. George J. Ball, Inc.*

{17}   *Gore* involved a 1965 sale of mislabeled tomato seed that occurred before the UCC went into effect. 279 N.C. at 197–98, 182 S.E.2d at 392. The seed did not produce defective tomatoes but yielded a type of tomato that was different

from the type indicated on the seed label.  *Id.* at 197, 182 S.E.2d at 392.  The plaintiff's complaint did not mention or ground a claim based on the Seed Law.  However, in authoring the court's opinion, Justice Lake relied heavily on the public policy evinced by the Seed Law in refusing to enforce a limitation of remedy that limited the plaintiff's recovery to the purchase price of the seed.  *Id.* at 199, 208, 182 S.E.2d at 393, 398.

{18}    Justice Lake first addressed whether the limitation should be considered as part of the agreement between the parties.  *Id.* at 201–02, 182 S.E.2d at 394–95.  In doing so, he followed rules of contractual construction that most likely have been modified by the UCC.  *Id.*; *see* N.C. Gen. Stat. § 25-2-719; *Severn Peanut Co. v. Indus. Fumigant Co.*, 807 F.3d 88, 91–92 (4th Cir. 2015).  Assuming that the limitation of remedies was part of the contract, Justice Lake then addressed whether the limitation could be enforced in a manner consistent with the public policy expressed by the Seed Law.  *Gore*, 279 N.C. at 206, 182 S.E.2d at 397.

{19}    The court held that the public policy of the Seed Law rendered the limitation of remedies unenforceable:

> Here, the statute has declared the policy of North Carolina to be one of protecting the farmer from the disastrous consequences of planting seed of one kind, believing he is planting another.  To permit the supplier of seed to escape all real responsibility for its breach of contract by inserting therein a skeleton warranty, such as was here used, would be to leave the farmer without any substantial recourse for his loss.
>
> While there is no element of personal safety involved in the use of falsely labeled seed, such as there is in the case of a defective automobile, the breach of the contract of sale of seed does not, like the breach of warranty of an automobile part, *sometimes* cause disaster.  It *always* causes disaster.  Loss of the intended crop is inevitable.  The extent of the disaster is measured only by the size of the farmer's planting.  It may well, in terms of financial loss, exceed the damages flowing from a breach of warranty of quality of an automobile part.
>
> We think it clear that the phrase, "to the extent of the purchase price," as used in the "Limitation of Warranty" relied upon by the defendant, is contrary to the public policy of this State as declared in the North Carolina Seed Law . . . and is invalid.  Such provision, therefore, even if it otherwise be deemed a part of the contract of sale,

> does not bar the plaintiff from a recovery in this action of the full
> damages which he would otherwise be entitled to recover for the
> breach of the contract by the defendant.

*Id.* at 208, 182 S.E.2d at 398 (citing *Klein v. Asgrow Seed Co.*, 54 Cal. Rptr. 609, 618 (Dist. Ct. App. 1966)).

{20}     The supreme court's application of the Seed Law in a private civil action in *Gore* is particularly noteworthy because the record suggests that the plaintiff did not mention the Seed Law in his complaint, and because Justice Lake relied on statutory provisions that, on their face, apply only to actions involving public enforcement, as the Seed Law does not afford a private cause of action. *See id.* at 206, 182 S.E.2d at 397; *see also, e.g.*, N.C. Gen. Stat. §§ 106-277.11, .34.

{21}     The present case is distinguishable, at least by the fact that, unlike the sale in *Gore*, Plaintiffs' purchases of Cross Creek's seed are clearly subject to the UCC.  Cross Creek contends that this distinction makes *Gore* inapplicable and that the case is instead controlled by the supreme court's subsequent holding in *Billings*, even though *Billings* did not involve a sale of mislabeled seed that was subject to the Seed Law.  *See Billings*, 290 N.C. at 507, 226 S.E.2d at 324.  Plaintiffs argue that *Gore* prevails because section 25-2-719 of the UCC must be read in harmony with the Seed Law, and where a transaction is subject to the Seed Law due to seed mislabeling, the public policy of the Seed Law continues to preclude the Court from enforcing the type of limitation on which Cross Creek relies.  While recognizing at oral argument that, absent a finding of seed mislabeling, the limitation might be enforced under controlling precedent, Plaintiffs' counsel emphasized that *Gore* makes clear that the particular risk of mislabeling is the sole risk that must be borne by the seed seller and cannot, as a matter of public policy, be allocated to the farmer—even by agreement—for the very reasons stated by Justice Lake in *Gore*. *See Gore*, 279 N.C. at 208, 182 S.E.2d at 398.

### B. *Gas House, Inc. v. Southern Bell Telephone & Telegraph Co.*

{22}     Five years after *Gore*, the North Carolina Supreme Court, in an opinion again authored by Justice Lake, discussed *Gore* in a case not governed by the UCC and not involving the sale of seed.  *See Gas House, Inc. v. S. Bell Tel. &*

*Tel. Co.*, 289 N.C. 175, 221 S.E.2d 499 (1976), *overruled in part on other grounds by State ex rel. Utils. Comm'n v. S. Bell Tel. & Tel. Co.*, 307 N.C. 541, 547, 299 S.E.2d 763, 766–67 (1983). In *Gas House, Inc. v. Southern Bell Telephone & Telegraph Co.*, the plaintiff sued for damages from lost potential sales when the defendant misclassified the plaintiff's "Yellow Pages" listing in the phone book. *Id.* at 179, 221 S.E.2d at 502. The preface to the Yellow Pages included a statement that purported to limit the defendant's liability for errors or omissions to the cost of the plaintiff's listings in the Yellow Pages. *Id.* Further, a separate contract between the parties limited the plaintiff's remedy to the cost of the listing in which the omission occurred. *Id.*

{23}    In upholding the contractual limitation on liability in *Gas House*, Justice Lake found *Gore* to be "easily distinguishable" because the defendant's omission of the advertisement from the proper section of its phone directory left the customer exactly where it would have been if it had not advertised with the telephone company. *Id.* at 185, 221 S.E.2d at 505. Justice Lake summarized the holding in *Gore* to say that "by reason of the North Carolina Seed Law, such a Limitation of Liability Clause in a seed contract is contrary to the public policy of this State." *Id.* at 185, 221 S.E.2d at 506 (citing *Gore*). The court found no comparable public policy relating to the sale of advertising by a phone company, even though a phone company may be regulated as a public utility in connection with other parts of its business. *Id.*

## C. *Billings v. Joseph Harris Co.*

{24}    Also five years after *Gore*, the North Carolina Supreme Court, in a third opinion authored by Justice Lake, considered a limitation of remedies in connection with a sale of seeds governed by the UCC. *Billings*, 290 N.C. 502, 226 S.E.2d 321. The Seed Law did not apply to the transaction in *Billings*, because that seed had not been mislabeled.

{25}    In *Billings*, a contract for the sale of cabbage seed included a warranty that the seeds would comply with the package description, an express disclaimer of all other express and implied warranties, and a limitation of remedies that

restricted a buyer's recovery to the purchase price of the seed. *Id.* at 504, 226 S.E.2d at 322. The plaintiff admitted that the seed had not been mislabeled and that he received the type of seed he had ordered. *Id.* Instead, he claimed that the cabbage was infected with a seed-borne disease that rendered the cabbage useless. *Id.* at 503, 226 S.E.2d at 321–22.

{26} In upholding the defendant's limitation of remedies, Justice Lake distinguished *Billings* from *Gore* on two grounds. First, there was no evidence in *Billings* that the seed was mislabeled, so the sale did not fall within the ambit of the Seed Law. *Id.* at 507, 226 S.E.2d at 324. Second, the purchase in *Billings* occurred after the UCC's effective date and was therefore governed by the UCC. *Id.* at 508, 226 S.E.2d at 324. Applying the UCC's provisions regarding the permissibility of contractual limitations of remedies, the supreme court upheld the defendant's warranty disclaimer and limitation of remedies. *Id.* at 510, 226 S.E.2d at 325.

{27} There is a superficial argument that *Billings* stands for the proposition that the enactment of the UCC in North Carolina effectively overruled *Gore*. But, the supreme court carefully limited its holding in a way that defeats such a superficial reading:

> Since in the present case we do not have any breach by the seller of a warranty of conformity to label, i.e., the type of seed ordered was actually delivered, we express no opinion as to whether, where there has been such a breach, a limitation of the buyer to the recovery of the purchase price is "reasonable in the light of the anticipated or actual harm caused by the breach."

*Id.* at 509–10, 226 S.E.2d at 325 (quoting N.C. Gen. Stat. § 25-2-718(1)). The court did not take the opportunity to limit *Gore*.

{28} The supreme court in *Billings* also referred to the official comment to UCC section 25-2-719, which reiterates that a limitation of remedies that purports to modify or limit the UCC's remedial provisions "in an unconscionable manner" is unenforceable. *See id.* at 510, 226 S.E.2d at 325 (emphasis omitted) (quoting N.C. Gen. Stat. § 25-2-719 cmt. 1). The court did not address whether the concepts in the official comment could also apply to violations of public policy. In sum, *Billings* left open the question whether a limitation of remedies in a seed transaction that

restricts the buyer's recovery to the purchase price of the seed will be enforced when the sale is subject to the Seed Law because of mislabeling.

### D. The Public Policy Expressed in *Gore* Survived North Carolina's Enactment of the UCC.

{29}     The North Carolina Supreme Court has not revisited its holding in *Gore* since its decision in *Billings* forty years ago.  Because the supreme court has not squarely confronted whether a limitation of remedies in a mislabeled-seed case governed by the UCC is enforceable, this Court must now do so.  The Court is influenced, in part, by the supreme court's election not to limit or overturn *Gore* when presented with the opportunity to do so in *Billings*.  Moreover, the Court has considered canons of statutory construction and finds that those canons support a conclusion that the expression of public policy in *Gore* survived North Carolina's enactment of the UCC and continues to apply in mislabeled-seed cases that are subject to the Seed Law.

{30}     The North Carolina legislature has amended both the UCC and the Seed Law since *Gore* was decided, but it has not amended either section 25-2-719 of the UCC or section 106-277.11 of the Seed Law.  *See Polaroid Corp. v. Offerman*, 349 N.C. 290, 303, 507 S.E.2d 284, 294 (1998) ("[T]he legislature is always presumed to act with full knowledge of prior and existing law and . . . where it chooses not to amend a statutory provision that has been interpreted in a specific way, we may assume that it is satisfied with that interpretation."), *abrogated on other grounds by Lenox, Inc. v. Tolson*, 353 N.C. 659, 548 S.E.2d 513 (2001); *Williams v. Williams*, 120 N.C. App. 707, 717, 463 S.E.2d 815, 822 (1995) ("[T]he General Assembly [is] presumed to know the content of the decisions of our courts . . . ."), *aff'd*, 343 N.C. 299, 469 S.E.2d 553 (1996); *see also* N.C. Gen. Stat. § 25-2-102 ("[T]his article [does not] impair or repeal any statute regulating sales to consumers, farmers, or other specified classes of buyers.").

{31}     The Court further concludes that the public policy of the Seed Law does not necessarily conflict with the UCC's policy of allowing contractual limitations of remedies among merchants, in appropriate circumstances.  Section

25-2-719 of the UCC and the official comment to that section make clear that there are instances where a limitation of remedies in a sales contract will not be enforced. *See* N.C. Gen. Stat. § 25-2-719 & cmt. 1.  Statutory-construction rules "dictate that when two statutes concern the same subject matter[,] they must be construed in harmony with one another."  *In re Belk*, 107 N.C. App. 448, 454, 420 S.E.2d 682, 686 (1992).  But, "where one statute is specific and the other is general, the specific provision must be taken as intended to constitute an exception to the general provision, because the legislature is not to be presumed to have intended a conflict." *Id.*; *see also* 1 Lary Lawrence, *Lawrence's Anderson on the Uniform Commercial Code* § 1-102:18 (3d ed. 2002) ("When a local non-UCC statute governs a specific point, it prevails over a general provision of the UCC.").

{32}    In the face of the clear public policy of the Seed Law that the supreme court recognized and enforced in *Gore*, the Court declines to infer a legislative intent for the UCC to supersede the public policy of the Seed Law in cases involving the sale of mislabeled seed.  If the Court must make an inference, it would infer that the official comment to section 25-2-719 evidences a legislative intent for public policy expressed in non-UCC statutes, in appropriate circumstances, to override limitations of remedies.  That is, the Court concludes that the UCC's general policy of allowing merchants to contractually allocate risks must yield to a public policy that precludes risk allocation in the context of mislabeled seed, because mislabeling is the sole risk that necessarily causes loss to the buyer yet is in the exclusive control of the seller.  *See Gore*, 279 N.C. at 208, 182 S.E.2d at 398.  As the United States Court of Appeals for the Fourth Circuit recognized recently in *Severn Peanut Co. v. Industrial Fumigant Co.*, a clear expression of public policy may render a limitation of remedies unenforceable when the limitation would otherwise be allowed under the UCC.  807 F.3d at 91.

## V.    IMMEDIATE APPELLATE REVIEW

{33}    The Court acknowledges that any appeal from this Order & Opinion is interlocutory, because it leaves "more to be done in the trial court."  *State ex rel. Jordan v. Oakes*, __ N.C. App. __, 771 S.E.2d 832, 833 (2015).  The Court

nonetheless believes that the particular circumstances of this matter warrant immediate appellate review and, if permitted, the Court would certify the matter for immediate appeal under Rule 54(b) of the North Carolina Rules of Civil Procedure because "there is no just reason for delay." N.C. R. Civ. P. 54(b). Because Rule 54(b) certification is restricted to "final judgment[s] as to one or more but fewer than all of the claims or parties," the Court is unable to certify this Order & Opinion under Rule 54(b). *Id.*; *see also Duncan v. Duncan*, 366 N.C. 544, 545, 742 S.E.2d 799, 801 (2013) ("Certification under Rule 54(b) permits an interlocutory appeal from orders that are final as to a specific portion of the case, but which do not dispose of all claims as to all parties.").

{34}    The ultimate issue in this matter is one of public policy—an issue better defined by our appellate courts—that requires an interpretation of two opinions from the North Carolina Supreme Court. The parties have jointly indicated their interest in and need for guidance from the supreme court on how its precedents should be applied.[2] The Court agrees. Without the ability to seek immediate appellate review of this Order & Opinion, the parties in each of these eight cases must await a final answer on a significant and controlling threshold issue until after a final, appealable judgment, which cannot be entered until complex fact and expert discovery are completed. That discovery is likely to be long, burdensome, and expensive. Fact-based summary-judgment motions and, if necessary, eight separate trials, would multiply these burdens and expenses.

{35}    The controlling issue of law in this matter will not be further defined through discovery. Further, discovery and additional proceedings have no purpose for Plaintiffs, Cross Creek, or the Court if the supreme court ultimately determines that Plaintiffs' remedies are limited to the purchase price each Plaintiff paid for Cross Creek's seed. Thus, if Cross Creek seeks immediate appellate review of this interlocutory Order & Opinion, the parties and the Court would substantially benefit from a ruling by the supreme court on this threshold issue.

---

[2] Because all eight of these actions were designated as mandatory complex business cases after October 1, 2014, appeal lies directly to the North Carolina Supreme Court. N.C. Gen. Stat. § 7A-27(a)(2) (2015).

{36}    Moreover, the issue decided by the Court today has importance beyond this case.  The question whether a limitation of remedies in a mislabeled-seed case governed by the UCC is enforceable is significant to North Carolina's jurisprudence, its agricultural community, and its system of commerce generally.

{37}    For these reasons, if Cross Creek seeks immediate appellate review of this Order & Opinion, the Court—recognizing the unusual circumstances of this matter—urges the supreme court to docket the appeal.  If such appeal is allowed, the Court will exercise its discretion to stay all further proceedings in this matter at the trial court, pending resolution of appellate proceedings.

## VI.    CONCLUSION

{38}    After careful review, the Court concludes that the North Carolina Supreme Court, if directly confronted with the question presented by Cross Creek's Motions, would hold that (1) the public policy of the Seed Law on which the supreme court relied in *Gore* has not been superseded by the UCC, (2) *Gore* still applies in cases where seed has been mislabeled in violation of the Seed Law, and (3) *Gore* does not allow Cross Creek to enforce its limitation of remedies against Plaintiffs if the seed sold to Plaintiffs was mislabeled.

{39}    Accordingly, Cross Creek's Motions are DENIED.


IT IS SO ORDERED, this the 20th day of April, 2016.


/s/ James L. Gale
James L. Gale
Chief Special Superior Court Judge
   for Complex Business Cases